s.a.r.l. ORLIAC, Plaintiff,

v.

WINEBOW, INC., Defendant and
Third-Party Plaintiff,

v.

Henri BERTHE, Cognac & Brandies
From France, Inc., and La Maison Du
Vigneron, Third-Party Defendants.

No. 83 Civ. 7286 (JMC).

United States District Court,
S.D. New York.

Aug. 31, 1984.

Solin & Breindel, P.C., New York City
(Daniel R. Solin, David L. Ferstendig and
Claude M. Tusk, New York City, of counsel), for plaintiff.

Gordon, Shechtman & Gordon, P.C., New
York City (Ronald H. Shechtman, Richard
M. Betheil and Richard Imbrogno, New
York City, of counsel), for defendant and
third-party plaintiff.

Max Block, Jr., New York City, for third-party defendants.

## MEMORANDUM AND ORDER

CANNELLA, Senior District Judge:

Plaintiff's motion for summary judgment
is granted in part and denied in part. Fed.
R.Civ.P. 56(a).

Defendant's motion for summary judgment is denied without prejudice with leave
to resubmit. Fed.R.Civ.P. 56(a).

Third-party defendants' motions to dismiss and for partial summary judgment are
denied without prejudice with leave to resubmit. Fed.R.Civ.P. 12(b)(2), (3), (4), (6);
56(b).

## FACTS

The parties to this action are entangled
in a web of litigation stretching from state
and federal courts to a French tribunal.
Each party is aligned as a plaintiff and
defendant somewhere in the list of lawsuits. Although the disputes involve a
large number of international wine and alcohol transactions, the instant action is limited to one shipment of wine.

Plaintiff s.a.r.l. Orliac ["Orliac"] is a French exporter of wines and brandies with its principal place of business in La Magistere, Tarn et Garonne, France. Defendant Winebow, Inc. ["Winebow"] is a New Jersey importer of alcohol and wine with offices in New Jersey and New York. Third-party defendant La Maison du Vigneron ["Vigneron"] is a French agricultural cooperative that produces wine and alcohol with its principal place of business in Lons le Saulnier, Jura, France. Third-party defendant Henri Berthe is a Connecticut domiciliary who acted as sales and collection agent for Orliac and Vigneron. Third-party defendant Cognac & Brandies from France, Inc. ["Cognac & Brandies"] is a Connecticut corporation run and apparently wholly owned by Berthe. Cognac & Brandies also acted as a collection agent on behalf of Orliac and Vigneron.

Vigneron, Orliac and Cognac & Brandies contracted on November 15, 1982 for Vigneron to ship its products through Orliac to American importers with all payments to be collected by Cognac & Brandies. On April 20, 1983, Orliac shipped 800 cases of Vigneron's Brut Royal wine, vintage 1981, to Winebow. Orliac invoice 320 requested payment of 192,000 French francs, approximately $21,734, by July 4, 1983. On April 25, 1983, Orliac shipped an identical order of wine to Winebow and requested the same purchase price through invoice 327, to be remitted by July 30, 1983. There is no dispute that both orders of wine were sold, shipped and delivered to Winebow which incurred a debt to Orliac of 394,000 francs, approximately $43,469.

Although it is unclear who toppled the first domino, Orliac at some point stopped paying Berthe's commissions and remitting Vigneron's share from the foreign sales. Berthe stopped sending Orliac payments from American importers and instead deposited the monies as a means of recovering his commissions. Vigneron sued Orliac for unpaid proceeds approximating one million francs in the Court of Commerce in Montauban, Tarn et Garonne. The French court ordered the seizure of Orliac's bank account at La Societe General, Bordeaux

and issued a "saisie-arret" or "stop payment" on August 12, 1983 authorizing Vigneron to start proceedings in the United States to attach outstanding payments owed to Orliac by American importers.

Cognac & Brandies sued Orliac, again in the Montauban court, for unpaid commissions, and Orliac counterclaimed for the amounts that Cognac & Brandies had retained to pay past commissions due. Each party to that action alleges damages approximating 1,500,000 francs. The French court ordered the seizure of Berthe's bank account in the amount of 200,000 francs at Credit Agricole, France. An accountant's report prepared under order of the Montauban tribunal concludes that Berthe owes Orliac approximately 135,000 francs. Orliac also alleges additional claims against Berthe for 3,727,000 francs which are not covered in the accountant's report. Orliac then brought the instant action against Winebow to recover outstanding debts resulting from the April shipments.

This Court granted summary judgment in favor of plaintiff for invoice 327. *See* Memorandum and Order, 83 Civ. 7286 (S.D. N.Y. May 2, 1984) [hereinafter "May Memorandum"]. Winebow admitted liability on the invoice and had deposited the funds pursuant to the "saisie-arret" in a segregated bank account. The Court found that the "saisie-arret", a procedural mechanism authorizing the attachment of assets, did not affect payment for invoice 327. Moreover, the French court does not have jurisdiction over Winebow, and Vigneron failed to proceed in United States courts. The Court noted that although the French court may require Orliac to remit payment to Vigneron for invoice 327, that issue is not before this Court.

Winebow failed to release the segregated funds to Orliac and the Court held them in contempt. Because of problems involving the substitution of counsel for Winebow, the Court did not impose sanctions but ordered Winebow to pay Orliac pursuant to the May Memorandum within two days.

*See* Memorandum and Order, 83 Civ. 7286 (S.D.N.Y. June 21, 1984).

## DISCUSSION

### Plaintiff's Motion for Summary Judgment

Orliac now seeks summary judgment as to invoice 320. It asserts that Winebow paid Berthe after Winebow was notified to remit payment only to Orliac. It is undisputed that Berthe was Orliac's collection agent, a position he had held since 1978. Winebow paid the entire amount of invoice 320 to Berthe on June 29, 1983. The Court denied a prior summary judgment motion on invoice 320 because Orliac presented only evidence that it sent Winebow a letter on July 7, 1983 requesting direct payment to Orliac's account at the Banque Nationale de Paris and asking Winebow not to pay Cognac & Brandies. *See* May Memorandum at 2–3.

Orliac now presents a telex sent to Winebow in New York on June 27, 1983, which was received, according to the telex acknowledgment. The telex requested Winebow to pay all invoices directly to Orliac and not to Cognac & Brandies. A second telex was sent to Winebow on June 28, 1983 requesting a return telex confirmation of the first telex.

Winebow does not dispute that it received the telexes; rather, they allege a disputed issue of material fact with respect to Berthe's agency and authority. Winebow's president, Peter Matt, affirms that he was uncertain of the relationship between Berthe, Orliac and Vigneron. Winebow "accordingly" obtained an indemnification from Vigneron, Cognac & Brandies and possibly Berthe protecting them from any claim by Orliac arising from their payments to Berthe.

To grant the instant motion, the Court must be convinced, after viewing the facts and circumstances in the light most favorable to Winebow, *see United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962), that no genuine issues of material fact exist for trial and that Orliac is entitled to a judgment as a matter of law. *See Adickes v. Kress & Co.,* 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970); *United States v. Potamkin Cadillac Corp.,* 689 F.2d 379, 381 (2d Cir.1982). Merely because a "factual dispute *may* exist, without more, is not sufficient to overcome a convincing presentation by the moving party." *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980) (emphasis in original).

Winebow was aware of Orliac's instructions not to pay Berthe and it demanded multiple indemnifications for Orliac's anticipated claim as a *quid pro quo* for paying Berthe. Winebow cannot avoid its obligation to Orliac by using the complex interrelationship of the parties as a smokescreen to summary judgment. Orliac's clear telex instructions on payment are not rebutted by Winebow's affidavits. Accordingly, the Court grants Orliac partial summary judgment on invoice 320. *See C.R.A. Realty Corp. v. Tri-South Investments,* 738 F.2d 73 at 78–79 (2d Cir.1984).

Orliac is awarded 192,000 francs, minus (1) the amount Berthe would normally receive as commission and (2) the amount Vigneron would normally receive as its share of the proceeds from invoices 320 and 327.[1]

---

1. Although the Court was inclined to reduce the award of summary judgment in the May Memorandum by the two amounts to be determined, neither Berthe nor Vigneron were parties to the action. After calculating the deductions from the 192,000 francs, Orliac will only be paid its share of the invoices and the third-party defendants are protected from the inequitable possibility that they may win a total net verdict against Orliac in the French litigations but would be unable to recover fully because Orliac's frozen and/or total assets are insufficient to satisfy the final judgments.

The Court is confident that the parties can arrive at a joint figure that reflects the Court's decision. The Court cites the accountant's report prepared for the French tribunal which lists 22,400 francs—11.67%—as Berthe's expected commissions for both invoices. The following illustrations—both assuming the accuracy of the 22,400 franc commission—should assist the parties:

*Defendant's Motion for Summary Judgment*

■ Winebow seeks summary judgment on its claim that any amount paid to Orliac is recoverable from the third-party defendants because of at least two indemnification agreements. It is axiomatic that a cause of action for indemnity does not accrue until payment of the primary liability is made. *See St. Paul Fire & Marine Ins. Co. v. United States Lines Co.*, 258 F.2d 374, 376 (2d Cir.1958); *Index Fund, Inc. v. Hagopian*, 91 F.R.D. 599, 605 (S.D. N.Y.1981). Any primary liability of Winebow has not been paid or even determined at this time. The instant third-party complaint for indemnity has therefore not accrued. Accordingly, defendant's motion for summary judgment is denied without prejudice, with leave to reopen if Winebow is forced to pay its primary liability. *See Franco-steel Corp. v. S.S. Tien Cheung*, 375 F.Supp. 794, 796 (S.D.N.Y.1973).

*Third Party Defendants' Motions to Dismiss and for Partial Summary Judgment*

Third-party defendants' motions are contingent on the availability of Winebow's claim for indemnification. If there is no primary liability, Winebow's claim is moot and third-party defendants' motions are moot. The Court finds it to be the more prudent course to stay decision on third-party defendants' motions and allow them to participate in the calculation of summary judgment damages. Accordingly, third-party defendants' motions are denied without prejudice with leave to reopen.

CONCLUSION

Plaintiff's motion for summary judgment is granted in part and denied in part. Fed. R.Civ.P. 56(a).

Defendant's motion for summary judgment is denied without prejudice with leave to resubmit. Fed.R.Civ.P. 56(a).

Third-party defendants' motions to dismiss and for partial summary judgment are denied without prejudice with leave to resubmit. Fed.R.Civ.P. 12(b)(2), (3), (4), (6); 56(b).

The parties are directed to submit a joint order to the Court for signature by September 7, 1984 at 5:00 p.m. If the parties are unable to reach an agreement on the final figure, this issue will be decided at trial on September 10, 1984 at 10:00 a.m. in Courtroom 1106.

SO ORDERED.

(1) Assume Orliac and Vigneron originally agreed to split the proceeds 2–1 in Orliac's favor after first subtracting Berthe's commission. Under this arrangement, Orliac would then receive 192,000 francs less 44,800 francs (representing two commissions) and less 113,067 francs (representing Vigneron's 56,533.33 franc share for each invoice). The net result is that Winebow would pay 34,133 francs to Orliac.

(2) Assume Orliac and Vigneron originally agreed to split the proceeds 50–50 after first subtracting Berthe's commission. Under this arrangement, Orliac would receive 192,000 francs less 44,800 francs (representing two commissions) and less 169,600 francs (representing Vigneron's 84,800 franc share for each invoice.) The net result is that Winebow would "owe" a negative amount of 22,400 francs. Winebow's recovery of this sum would be an undeserved windfall, and therefore, no party would recover when there is a negative debt.

The French litigation is still in the discovery stage and the results in the instant action should necessarily affect the determination of damages in France. A recovery by Orliac here should work to its disadvantage in France; likewise, if the end result is that Orliac was overpaid on the two invoices, the French court should even any discrepancy.