VISTA COMPANY, a New York Limited Partnership; Persky–Bright Associates, a New York Limited Partnership; Bright–Persky Associates, a New York Limited Partnership; Barclay Associates, a New York Limited Partnership, Reno Associates, a New York Limited Partnership; Claridge Associates, a New York Limited Partnership; Devon Company, a New York Limited Partnership, Lester Persky, an individual; and Richard S. Bright, an individual, Plaintiffs,

v.

COLUMBIA PICTURES INDUSTRIES, INC., a Delaware Corporation; Columbia Pictures Entertainment, Inc., a Delaware Corporation; and Does 1 through 100, inclusive, Defendants.

No. 89 CIV 2813 (LBS).

United States District Court, S.D. New York.

Nov. 20, 1989.

As Amended Dec. 6, 1989.

Kaye, Scholer, Fierman, Hays & Handler, New York City (Pierce O'Donnell, James E. Doroshow, Michael Malina, Peter A. Walker, Martha D. Lemer, Richard J. Halloran, of counsel), for plaintiffs.

Weil, Gotshal & Manges, New York City (James W. Quinn, Kenneth L. Steinthal, Karen E. Donald, Ann E. Dibble, Bruce S. Meyer, of counsel), for defendants.

SAND, District Judge.

This action arises from the acquisition and ownership of various films by plaintiffs, seven New York limited partnerships and two individuals, and the marketing and licensing of these films by defendants, Columbia Pictures Industries, Inc. and Columbia Pictures Entertainment, Inc. Defendants move to dismiss plaintiffs' claims for recovery of certain tax losses on the grounds of lack of standing, prematurity, and lack of causation; for summary judgment on these same claims on the ground of judicial estoppel; and to dismiss plaintiffs' civil RICO claims, the third party beneficiary claims of two general partners, the claim of these two general partners for interference with prospective economic advantage, and plaintiffs' claims for common law and constructive fraud, negligence, rescission, and copyright infringement. Defendants also move for sanctions pursuant to Fed.R.Civ.P. 11.

## I. BACKGROUND

During the period from 1973–75, because of financial difficulties, Columbia Pictures Industries, Inc. and Columbia Pictures Entertainment, Inc. (hereinafter "Columbia") sold a number of motion pictures (hereinafter "the films") to plaintiffs, seven New York Limited partnerships (hereinafter "the Partnerships"). These partnerships were formed by plaintiffs Lester Persky and Richard Bright, who also became the general partners. The films were the principal business of the Partnerships and their sole income producing assets. Plaintiffs paid for these films with a combination of cash and promissory notes secured by the films. Pursuant to the acquisition contracts (hereinafter "the contracts"), Columbia was to market and distribute the films on plaintiffs' behalf. A percentage of the earnings from the films was to go toward repayment of the promissory notes.

Plaintiffs allege that after signing the contracts, defendants engaged in a variety of acts, some of which were illegal and some of which breached the contracts. Specifically, plaintiffs allege that Columbia engaged in various practices which had the effect of reducing competition in the market for the licensing of plaintiffs' films. Plaintiffs also maintain that Columbia materially breached its contractual and fiduciary duties by delaying or failing to report revenues earned by the films, charging improper costs and fees, failing to credit plaintiffs for revenues earned by the films, failing to exploit the films in all available markets and media, failing to exploit the films competently, failing to refund prepaid monies unearned and not due Columbia, engaging in extortion, and improperly declaring the exercise of a purported option to continue distributing the films. Plain-

tiffs also allege that Columbia, by claiming both investment tax credit and depreciation allowance for the films on its tax returns, breached its contractual warranty that it would "do nothing for tax purposes to derogate" plaintiffs' ownership of the films.

Beginning in 1977, the IRS began auditing the tax returns of certain of the individual partners in the various Partnerships. Several of these partners were served with deficiency notices and filed petitions for redetermination in the United States Tax Court. These partners also engaged in settlement discussions with the IRS. A number of the partners in two of the seven partnerships were eventually able to achieve settlements. Plaintiffs allege that during the time when these audits were taking place, the IRS conducted an audit of Columbia and discovered that Columbia was claiming investment tax credit and depreciation for the films. Plaintiffs also believe that this discovery adversely affected the settlement negotiations. Eventually, the IRS disallowed various tax benefits claimed by the partners, and plaintiffs proceeded to litigation before the Tax Court.

After a trial involving partners of two of the partnerships, the Tax Court entered an April 1988 judgment adverse to the Partnerships, resulting in what plaintiffs estimate was an increased tax liability for the partners of nearly $65 million. An extensive written opinion under the caption *Bailey v. Commissioner of Internal Revenue* preceded the judgment. At this time, plaintiffs' appeal of the Tax Court decision is pending before the United States Court of Appeals for the Second Circuit and none of the tax liabilities have been paid. Plaintiffs also maintain that they incurred in excess of $600,000 in attorney's fees in litigating before the Tax Court.

On November 16, 1988, Columbia filed an action seeking a declaratory judgment validating its extension in perpetuity of its distribution right in the films. Later that same day, plaintiffs filed an action in federal district court in California. It was thereafter resolved by consent of both parties that plaintiffs would bring all their non-antitrust claims against Columbia before this Court and that these actions would be consolidated with Columbia's declaratory judgment action. A letter "standstill agreement" extended Columbia's distribution rights in the films until thirty days after this Court enters a final judgment. Defendants now move to dismiss a number of plaintiffs' claims on a variety of grounds.[1] Defendants also move for summary judgment on the grounds of judicial estoppel on plaintiffs' claims to recover the tax losses and for sanctions under Fed.R.Civ.P. 11.

## II. DISCUSSION

For the purposes of a motion to dismiss, the factual allegations of the Complaint must be accepted as true, *Dwyer v. Regan*, 777 F.2d 825, 828–29 (2d Cir.1985), *modified*, 793 F.2d 457 (1986), and a complaint must be construed favorably to the pleader. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). A complaint will not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 236, 94 S.Ct. at 1686 (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

### A. *"Tax Claims"*

In their so-called "tax claims," plaintiffs seek recovery of the tax losses they incurred before the Tax Court. According to plaintiffs, these claims include the breach of contract claim (Claim One), the indemnity claim (Claim Fourteen), the claim for breach of the covenant of good faith and fair dealing (Claim Two), the claim for breach of fiduciary duty (Claim Three), the

---

**1.** Defendants contend that plaintiffs' complaint should be dismissed under Fed.R.Civ.P. 8 because it is "prolix and impossible to answer." At oral argument, the Court granted relief by stating to defendants that if in preparing their answer they sincerely believe that the allegation is a redundancy or something to which they need not respond, they can answer by asserting that "since this paragraph of the complaint is an unnecessary narrative of plaintiff's view of the industry, defendant does not respond." Transcript of Oral Argument August 9, 1989 at 6 (hereinafter "Tr.").

fraud claims (Claims Ten, Eleven and Twelve), and the rescission claim (Claim Eighteen). Defendants move to dismiss all these claims on four grounds: lack standing, prematurity, lack of causation, and judicial estoppel. Because the Court reaches a different result on the issue of prematurity for the indemnity claim (Claim Fourteen), that claim will be dealt with separately from the other claims in portions of the discussion that follows.

### (1) Standing

■ Defendants argue that the "tax claims" are defective because plaintiffs lack standing to assert them and claim that only the individual partners can bring an action to recover the tax liabilities. It must be remembered, however, that plaintiffs' complaint asserts claims for breach of contract, indemnity, breaches of the covenant of good faith and fair dealing, breach of fiduciary duty, fraud, and rescission. Though the complaint does seek recovery for the tax liabilities of individual partners, all these claims derive from the contracts or dealings between the Partnerships and Columbia, not between the individual partners and Columbia. It goes without saying that these contracts, as with most if not all partnership contracts, were negotiated and executed for the benefit of the individual partners.

Fed.R.Civ.P. 17(a) provides that "... a party with whom or in whose name a contract has been made for the benefit of another ... may sue in that person's own name without joining the party for whose benefit the action is brought." Although the damages sought are tax liabilities incurred by individual partners, the Partnerships can properly bring an action to enforce rights deriving from the contracts it negotiated for the benefit of the individual partners. *See Bache & Co. v. Int'l Controls Corp.*, 324 F.Supp. 998, 1004–05 (S.D.N.Y.1971), *aff'd*, 469 F.2d 696 (2d Cir.1972) (Broker in whose name contract was made could bring action on behalf of customers under Rule 17(a). "The law wisely does not require the inconvenience to the court and the expense to the parties of having the 145 [of broker's] customers made actu-

al parties to this suit."). At oral argument, plaintiffs' counsel indicated that the individual partners were expected to provide their tax returns during discovery. Tr. at 35. On the basis of counsel's representations, the Court is convinced that defendants are unlikely to suffer any prejudice by this Court's decision on standing.

The case which defendants cite, *Apache Bend Apartments, Ltd. v. United States*, 702 F.Supp. 1285, 1290 n. 3 (N.D.Tx.1988), does not conflict with this result. In *Apache Bend*, various plaintiffs, including two limited partnerships, sought to challenge the constitutionality of the Tax Reform Act of 1986. The Court found that because the limited partnerships were not taxpayers themselves, they did not have standing to challenge the act even on behalf of the taxpaying partners. Here, the Partnerships seek to vindicate rights arising from contracts which were negotiated and signed in the name of the Partnerships for the benefit of the individual partners. These circumstances fit squarely within the scope of Rule 17(a) and the partnerships therefore have standing to assert the claims on behalf of the partners. If, as defendants contend, *Apache Bend* stands for the proposition that no one other than the taxpayer can ever have standing to recover tax losses, the Court believes this to be too wide a holding, especially for cases where Rule 17(a) applies directly.

### (2) Prematurity

■ Columbia argues that plaintiffs fail to state a claim for enforcement of the contractual indemnification clause because none of the Partners have paid any judgment arising from the Tax Court decision. Under New York law, it is "axiomatic" that an indemnitee cannot recover under an agreement for indemnification against loss or damage until "payment of the primary liability is made." *s.a.r.l Orliac v. Winebrow, Inc.*, 595 F.Supp. 470, 473 (S.D.N.Y. 1984). *See also Mars Assocs., Inc. v. New York City Educ. Constr. Fund*, 126 A.D.2d 178, 513 N.Y.S.2d 125, 133 (1st Dep't 1987). Although a judgment has been rendered against the plaintiffs in the

Tax Court, they have not as yet paid any of this judgment. Plaintiffs point out, however, that they have incurred "in excess of $600,000 in attorney fees in litigation with the [IRS]." Clearly plaintiffs have a right to seek indemnification under the contract clause for the litigation expenses they have already incurred.

Plaintiffs seek to use their litigation expenditures as a justification for the Court to consider their entire claim for indemnification, including indemnification for the tax liabilities. In support of their argument, plaintiffs cite various cases which hold that attorneys' fees are "legitimate items of damage" under these types of indemnification clauses and can be recovered. *O'Neal v. General Electric Co.*, 122 Misc.2d 430, 470 N.Y.S.2d 67, 70 (Sup.Ct.1967); *In re Campbell's Estate*, 176 Misc. 543, 27 N.Y. S.2d 831, 833 (Sur.Ct.1941). As defendants correctly point out, however, these cases do not establish that the incurring of legal fees "triggers" an indemnity for losses or damages not yet incurred.

Plaintiffs also argue that even if the indemnity claim is premature, the Court should, in the interests of judicial economy, consider the claims anyway because the same facts and law are dealt with in plaintiffs' breach of contract claim. As authority for their proposition, plaintiffs cite two New York cases which carve out an exception to the general rule that payment of the primary liability must be made before recovery on an indemnification clause can take place. *See Sheftman v. Balfour Hous. Corp.*, 30 Misc.2d 924, 219 N.Y.S.2d 461, 462 (Sup.Ct.1961); *Smith v. Smucker*, 198 Misc. 944, 100 N.Y.S.2d 35, 38 (Sup.Ct. 1950). It is clear, however, that this exception applies only to "third-party actions" where a party, in effect bringing or contesting an action on behalf of a potential indemnitor, seeks to implead that additional party. The purpose of this exception is to permit all parties to "establish their rights and liabilities in one action." *Burgundy Basin Inn v. Watkins Glen Grand Prix Corp.*, 51 A.D.2d 140, 379 N.Y.S.2d 873, 880 (Sup.Ct.1976).

While some judicial economy would probably be achieved by permitting plaintiffs to proceed with their claims for their tax liability at this stage, New York courts have clearly defined the circumstances where a Court may act to achieve such economy. In *Mars Assocs.*, 513 N.Y.S.2d at 133, a general contractor sought indemnification from an education construction fund for claims by subcontractors that the general contractor owed them money. The general contractor had not yet paid the subcontractors any of the money. The Court, holding that the indemnification claims were premature, distinguished the third-party exception on the narrow grounds that the general contractor had not sought to implead the education construction fund when it was sued by the subcontractors in an earlier related action. *Id.* at 133. This reasoning suggests that the only circumstances where this exception could conceivably have applied to the parties in this case would have been if plaintiffs had impleaded Columbia in the Tax Court case. The case now before this Court clearly does not fit within the exception.

Defendants' motion to dismiss the indemnity claim on the grounds of prematurity is granted to the extent that plaintiffs seek indemnity for liabilities which they have not yet incurred. At such time as these payments are made, plaintiffs may move for leave to amend their complaint to reflect this fact.

### (3) Causation

■ Defendants argue that plaintiffs cannot allege the requisite causation between the $65 million tax loss and Columbia's conduct. We have determined that plaintiffs can pursue their indemnification claim only in so far as it seeks recovery of payments already made and that the $65 million tax liability has not yet been paid. For the same reasons discussed below, we find that for purposes of a motion to dismiss the complaint sufficiently alleges a causal relationship between defendants' conduct and plaintiffs' legal expenditures.

The Court must decide whether defendants' conduct was "a substantial causative

factor in the sequence of events that led to [plaintiffs'] injury." *Nallan v. Helmsley–Spear, Inc.*, 50 N.Y.2d 507, 520, 429 N.Y. S.2d 606, 614, 407 N.E.2d 451, 459 (1980). Plaintiffs advance two theories to link defendants' conduct to the tax liabilities. First, plaintiffs allege that when the IRS learned that Columbia was keeping the films on its books and claiming investment tax credit and depreciation, it terminated settlement discussions with the plaintiffs, forcing them to litigate in the Tax Court. Second, plaintiffs allege that Columbia's failure to pay amounts due under the promissory notes in a prompt and complete manner was "a material factor in the Partnerships' loss in the tax Court." Plaintiffs' Memorandum of Law in Opposition at 25.

As to the plaintiffs' first theory of causation, the relevant issue is the state of mind of the IRS officials conducting the settlement negotiations. It is entirely plausible that when the IRS learned from its audit that both the plaintiffs and Columbia were claiming the tax benefits of ownership of the same property, its negotiating position would change. For the purposes of this motion to dismiss, plaintiffs' factual allegation that the IRS was influenced must be accepted as true.

Having decided that plaintiffs' first theory meets the requirements for requisite causation, we need not consider plaintiffs' second theory. If the settlement negotiations broke down because of Columbia's conduct, Columbia could be held responsible for plaintiffs having to litigate before the Tax Court and having incurred the tax liabilities. Defendants point to the Tax Court opinion as establishing that Columbia's conduct did not influence that Court in reaching its decision. Whether or not this is true, plaintiffs have already alleged a sufficient causal link between their injury and defendants' conduct to survive this motion to dismiss. And whether or not plaintiffs can show that defendants' conduct caused them to incur the entire $65 million tax liability is not an appropriate issue for the Court to decide now. In view of the wording of the indemnification clauses in the contracts, the Court also finds that defendants' argument that the parties did

not contemplate that Columbia would be responsible for plaintiffs' tax losses is not a basis for dismissal.

### *(4) Judicial Estoppel*

■ Defendants argue that plaintiffs' "tax claims" are barred under the doctrine of judicial estoppel. They suggest that plaintiffs position before the Tax Court that the purchase of the films was not primarily tax motivated and some specific comments in plaintiffs' briefs in the Tax Court proceedings are inconsistent with the position plaintiffs now take to the effect that they are entitled to recovery of the $65 million in tax liabilities incurred in the Tax Court proceeding. Because the defendants wish the Court to consider the contents of the briefs plaintiffs filed before the Tax Court, defendants' motion was converted to one for summary judgment on this discrete issue.

Once again, because plaintiffs' claim for indemnification for the tax liabilities is premature, the Court can consider only whether the position taken by the plaintiffs in the Tax Court bars their claim for indemnification for the litigation costs already incurred, not for the tax liabilities not yet paid. For the same reasons discussed below, the Court finds that the judicial estoppel issue as it relates to the claim for indemnification for the litigation expenditures cannot be resolved on a summary judgment motion.

At the outset, it should be noted that it is not clear that the doctrine of judicial estoppel is recognized in this circuit. *See United States v. Bedford Assocs.*, 713 F.2d 895, 904 (2d Cir.1983); *Horger v. New York Univ. Medical Center*, 642 F.Supp. 976, 980–81 (S.D.N.Y.1986) ("The New York Courts have not widely embraced the doctrine of judicial estoppel and will apply it only when a party reverses its earlier position in what is essentially clear and intentional fraud."). When applied, the doctrine seems to have three elements: (1) an "unequivocal assertion of law or fact" by a party in a judicial proceeding, (2) an "intentionally inconsistent" assertion by that same party in a subsequent judicial pro-

ceeding, and (3) a purpose to "mislead the Court and obtain unfair advantage against another party." *United States v. Starrett City Assocs.*, 605 F.Supp. 262, 264 (E.D.N. Y.1985).[2] *See also David v. Showtime/The Movie Channel, Inc.*, 697 F.Supp. 752, 763 (S.D.N.Y.1988); Wright & Miller, Federal Practice & Procedure § 1283 at 376–77 (1969). In order to invoke the bar of judicial estoppel, at the very least the second assertion must be clearly inconsistent with the first, or as several courts have put it, an "intentional self-contradiction." *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1167 (4th Cir.1982) (quoting *Scarano v. Central R.R. Co. of New Jersey*, 203 F.2d 510, 513 (3rd Cir.1953)).

Before the Tax Court, plaintiffs argued that they were primarily motivated by the prospect of profit in purchasing the films from Columbia. 26 U.S.C. § 183(a) limits the availability of the itemized tax deductions in that chapter to activities "engaged in for profit." Plaintiffs thus sought to establish that tax benefits were not their main concern in purchasing the films. It is quite clear that the plaintiffs argued on a general level that they "expected" the investment to produce meager tax benefits, not that the investment actually resulted in meager benefits. Furthermore, these investments could have been profit motivated and still have resulted in substantial tax benefits. The Court finds that these two positions are not self contradictory.

Defendants point to various quotations from plaintiffs' briefs before the Tax Court which they claim are inconsistent with the position plaintiffs now take. Most of these statements were again for the purpose of establishing that plaintiffs had the requisite motives at the time of the investment. However, at one point the plaintiffs, while discussing actual profits, claimed that "the tax benefits to the partners, aside from some deferral, will actually be small or negative." Reply Brief for Petitioners before United States Tax Court at 95. Despite strenuous efforts by plaintiffs to put this comment in its "proper context," primarily by placing emphasis on the deferral, there is clearly some tension between the tone and content of this assertion and plaintiffs' claim that they are now entitled to $65 million in disallowed tax benefits. The Court is of the opinion, however, that whether these comments actually contradict plaintiffs' present claim remains a "material fact" as to which there is a genuine dispute. Fed.R.Civ.P. 56(c).[3] Therefore, the issue should not be resolved on a motion for summary judgment. To prevail before a trier of fact, defendants will also have to demonstrate that plaintiffs reversed their earlier position in what is clear intentional fraud or intended to deliberately mislead the Court.

### B. *Fraud Claims*

Defendants argue that plaintiffs' claims for common law fraud and constructive fraud should be dismissed because they are "wholly redundant" and because plaintiffs have failed to comply with the requirements of Fed.R.Civ.P. 9(b). Because we find that the fraud claims are redundant, we will not consider in this portion of the opinion whether the requirements of Rule 9(b) have been met.

---

**2.** Judicial estoppel can only be invoked when a party *successfully* asserted an inconsistent position in the prior proceeding. *City of Kingsport, Tenn. v. Steel and Roof Structure, Inc.*, 500 F.2d 617, 620 (6th Cir.1974). Nevertheless, judicial estoppel does not require a prior litigation of the issue in question, "merely a prior judicial acceptance of the factual assertion made by the party who now advances an inconsistent contention." *Konstantinidis v. Chen*, 626 F.2d 933, 937 n. 6 (D.C.Cir.1980). Judicial acceptance has been defined as the first court adopting the argument advanced by the party, "either as a preliminary matter or as part of a final disposition." *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 n. 5 (6th Cir.1982). As plaintiffs' themselves concede, the Tax Court accepted their argument that the film deals were primarily profit motivated. As a result, the fact that plaintiffs ultimately lost the case in Tax Court does not preclude the application of judicial estoppel in this case, for there has been judicial acceptance of plaintiffs' position in an earlier court proceeding.

**3.** On a summary judgment motion, of course, the court must "resolve all ambiguities and draw all reasonable inferences in favor of the party defending against the motion ..." *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987).

While under New York law an action for fraud will lie where "a promise was actually made with a preconceived and undisclosed intention of not performing it ...," *Sabo v. Delman,* 3 N.Y.2d 155, 160, 164 N.Y.S.2d 714, 716, 143 N.E.2d 906, 908 (1957), a claim for fraud will be dismissed when "the only fraud charged relates to a breach of contract." *Trusthouse Forte v. Garden City Hotel, Inc.,* 106 A.D.2d 271, 483 N.Y.S.2d 216, 218 (1st Dep't 1984). *See also Brick v. Cohn–Hall–Marx Co.,* 276 N.Y. 259, 263–64, 11 N.E.2d 902 (1937); *Gould v. Community Health Plan of Suffolk, Inc.,* 99 A.D.2d 479, 470 N.Y.S.2d 415, 417 (2nd Dep't 1984); *L. Fatato v. Decrescente Distrib. Co.,* 86 A.D.2d 600, 446 N.Y.S.2d 120, 121–22 (2nd Dep't 1982); *Chase v. United Hosp.,* 60 A.D.2d 558, 400 N.Y.S.2d 343, 344 (1st Dep't 1977). The inclusion of allegations of intent and/or concealment in the complaint "does not change the nature of the action ... from an action upon contract to an action upon fraud." *Calamel v. Ridge View Realty Corp.,* 115 A.D.2d 279, 496 N.Y.S.2d 154, 155 (4th Dep't 1985) (quoting *Brick,* 276 N.Y. at 264, 11 N.E.2d 902), *appeal dismissed,* 67 N.Y.2d 799, 501 N.Y.S.2d 324, 492 N.E.2d 397 (1986).

Much of the content of plaintiffs' fraud claims alleges that defendants agreed to the terms of the contracts with no intention of performing the obligations required by those terms. However, New York law states clearly that an allegation that the defendant "made the agreement knowing that [he or she] would not abide by it ... says nothing which is not legally embraced by [a] cause of action for breach of contract." *L. Fatato,* 446 N.Y.S.2d at 121.

Plaintiffs point out that the remainder of their fraud claim is based upon concealment which took place after the contracts were executed. Once again, however, the alleged concealment was conduct which allegedly breached the contracts. Furthermore, the conduct and omissions allegedly concealed were of interest to the plaintiffs only because they related to defendants' performance of their contractual obligations. For example, plaintiffs allege that after the contracts were signed, defendants concealed that they "entered into license agreements which substantially reduced the revenue received by and the value of plaintiffs' films." Complaint at 81. While this conduct standing by itself may be sufficient to establish fraud, the license agreements were only important to the plaintiffs because of the impact they had on the flow of revenue which plaintiffs were entitled to under the contract, part of which was to be used to repay the promissory notes. Other than with respect to RICO, where different considerations apply, see *infra* p. 1301, plaintiffs allege no monetary damages or adverse consequences flowing from the alleged fraud which are not encompassed within the contract claim itself.

### C. *Negligence Claim*

■ Defendants also argue that plaintiffs' claim of negligence is defective for similar reasons. Under New York law, "[a]cts which constitute a breach of contract may also give rise to liability in tort if they violate a legal duty independent of the contractual relationship between the parties." *Contemporary Mission, Inc. v. Bonded Mailings, Inc.,* 671 F.2d 81, 85 (2d Cir.1982). *See also Hargrave v. Oki Nursery, Inc.,* 636 F.2d 897, 899 (2d Cir.1980). The question then is whether defendants' conduct could have violated a legal duty independent from their contractual duties.

Plaintiffs' complaint alleges that from 1973 through 1975 "Columbia made representations and warranties to Plaintiffs regarding the special trust and confidence which Plaintiffs should place in Columbia with regard to Columbia's licensing and distribution of films owned or produced by Plaintiffs." Complaint at 66. As has been discussed, the licensing and distribution of the films was Columbia's responsibility under the contracts. Any representations obligating Columbia to license and distribute the films, whether made before or after the actual signing of the formal contracts, could not have given rise to an independent duty. At most, the "representations and warranties" outside the text of the contracts themselves affirmed Columbia's pre-existing contractual duties or anticipated duties they would soon assume. Plaintiffs'

complaint offers no support for its conclusion that these representations "transcended the provisions of the contractual agreement." *Id.* Plaintiffs negligence claim is therefore dismissed.

### D. *Rescission Claim*

■ Defendants offer three reasons for this Court to dismiss plaintiffs' claim for rescission. First, defendants contend that plaintiffs cannot seek both to enforce and rescind the contracts. While under New York law a party must elect either an action for rescission of the contract or an action for damages, it is clear that such an election may take place after trial. *Croce v. Kurnit*, 565 F.Supp. 884, 894 (S.D.N.Y. 1982), *aff'd*, 737 F.2d 229 (2d Cir.1984). *Merry Realty Co. v. Shamokin & Hollis Real Estate Co.*, 230 N.Y. 316, 130 N.E. 306 (1921), a case defendants look to for support, is consistent with this rule. In *Merry Realty* the Court of Appeals found that a plaintiff whose complaint contained only a claim for rescission could not be awarded the "inconsistent remedy" of damages by the trier of fact at a later time. *Id.* at 321, 325, 130 N.E. 306. The Court noted, however, that the plaintiff could have avoided the problem by including a claim for damages in the same complaint, as has been done here. *Id.* at 324, 130 N.E. 306.

■ Second, defendants argue that plaintiffs have waived their right to assert a claim for rescission. The right to rescind must be exercised promptly after the discovery of the wrong or defect. *Fink v. Friedman*, 78 Misc.2d 429, 358 N.Y.S.2d 250, 259 (Sup.Ct.1974). As a general matter, "[a]cceptance of benefit under the contract with knowledge of the wrong constitutes a waiver of the wrong." *New York Tel. Co. v. Jamestown Tel. Corp.*, 282 N.Y. 365, 372, 26 N.E.2d 295 (1940). *See also Karson v. Arnow*, 32 Misc.2d 499, 224 N.Y. S.2d 891, 898 (Sup.Ct.1962). Plaintiffs' complaint does indicate that plaintiffs discovered the alleged breach by Columbia as early as July 3, 1980. Complaint at 56. Nevertheless, plaintiffs were for the most part unaware of their alleged injuries until the Tax Court issued its decision in April 1988. Applying the waiver rule as defendants suggest would create an incentive for parties to litigate before knowing for certain that they have suffered any injury. The Court declines to apply the rule in such a fashion.

■ Defendants' third argument is that their breach was not "willful [and] so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract." *Canfield v. Reynolds*, 631 F.2d 169, 178 (2d Cir.1980) (quoting *Callanan v. Powers*, 199 N.Y. 268, 284, 92 N.E. 747 (1910)). To be entitled to rescission, plaintiffs must allege a breach "going to the root of the contract." *Direction Assocs., Inc. v. Programming & Systems*, 412 F.Supp. 714, 719 (S.D.N.Y. 1976) (Weinfeld, J.). Defendants argue that the purpose of the contracts was to provide Columbia with a needed cash stream through the sale of the films and to provide plaintiffs with a means for acquiring and producing motion pictures. According to defendants, since these purposes were not undermined by the alleged breach, rescission is inappropriate. Plaintiffs' goal, stated somewhat differently, was to acquire ownership of the films and to enjoy the benefits associated with ownership. If plaintiffs were denied tax benefits incident to ownership because of defendants' breach, there would clearly have been interference with plaintiffs' right to ownership of the films.

Defendants' motion to dismiss insofar as it relates to the rescission claim is denied.

### E. *Third Party Beneficiary Claims*

■ Plaintiffs Lester Persky and Richard S. Bright assert a claim for breach of contract as third party beneficiaries. Defendants contend that Persky and Bright do not meet the requirements for third party beneficiaries under New York law. More specifically, defendants argue that Persky and Bright were nothing more than typical general partners in a limited partnership. According to defendants, if Persky and Bright can advance a third party claim, any general partner could sue individually as a third-party beneficiary of contracts entered into by the partnership.

Under New York law, only an intended beneficiary of a contract may assert a claim as a third party. *Port Chester Elec. Constr. Corp. v. Atlas*, 40 N.Y.2d 652, 655, 389 N.Y.S.2d 327, 330, 357 N.E.2d 983, 985–86 (1976). An intended beneficiary is one whose "right to performance is 'appropriate to effectuate the intention of the parties' to the contract *and* either the performance will satisfy a money debt obligation of the promisee to the beneficiary or 'the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.'" *Lake Placid Club Attached Lodges v. Elizabethtown Builders, Inc.*, 131 A.D.2d 159, 521 N.Y.S.2d 165, 166 (3rd Dep't 1987) (quoting Restatement Second of Contracts § 302(1)(a) & (b) (1979)). *See also Septembertide Publishing B.V. v. Stein and Day, Inc.*, 884 F.2d 675, 679–80 (2d Cir.1989); *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., Inc.*, 66 N.Y.2d 38, 45, 495 N.Y.S.2d 1, 5, 485 N.E.2d 208, 212 (1985) (third party's right to enforce contract generally upheld when no one other than third party can recover or language of the contract "clearly evidences an intent to permit enforcement by the third party"). It is established, however, that "the obligation to perform to the third party plaintiff need not necessarily be expressly stated in the contract." *United States v. Ogden Technology Laboratories, Inc.*, 406 F.Supp. 1090, 1092 (E.D.N.Y.1973). *See also Strauss v. Belle Realty Co.*, 98 A.D.2d 424, 469 N.Y.S.2d 948, 950 (2nd Dep't 1983) (quoting *Airco Alloys Div. v. Niagara Mohawk Power Corp.*, 76 A.D.2d 68, 430 N.Y.S.2d 179, 186 (4th Dep't 1980)), *aff'd*, 65 N.Y.2d 399, 492 N.Y.S.2d 555, 482 N.E.2d 34 (1985).

In their complaint, plaintiffs state only that Persky and Bright were "direct and intended beneficiaries—together with the Partnerships and limited partners—of the benefits to be derived from Columbia's performance of the purchase ..." Complaint at 106. In considering a motion to dismiss, of course, the Court must accept plaintiffs' factual assertions as true, including assertions regarding state of mind. While no doubt conclusory, the assertion that performance of the contractual obligations was intended to benefit Persky and Bright, along with the description of the direct and immediate benefits Persky and Bright were expected to receive and the connections between Persky and Bright and the Partnerships, are sufficient to survive a motion to dismiss. The Court is not prepared to conclude as a matter of law that Persky and Bright are not third party beneficiaries.

Defendants argue that plaintiffs have failed to allege any basis for their assertion or offer any facts which suggest that the contracts were intended to provide for enforcement by the individual partners. These arguments are not sufficient to merit dismissal however. If Persky and Bright cannot support their assertion of the requisite intent, defendants will have an opportunity to demonstrate this to a trier of fact at a later stage in this litigation. Finally, Persky and Bright's status as general partners cannot be said to foreclose the possibility that they are also intended third party beneficiaries of the contracts.

### F. Claim for Tortious Interference with Economic Advantage

■ Defendants also seek dismissal of Plaintiffs Persky and Bright's claim for tortious interference with economic advantage. To state such a claim, plaintiffs must allege at a minimum that the defendant "interfere[d] with business relations existing between the plaintiff and a third party, *either* with the sole purpose of harming the plaintiff *or* by means that are 'dishonest, unfair or in any other way improper.'" *Martin Ice Cream Co. v. Chipwich, Inc.*, 554 F.Supp. 933, 945 (S.D.N.Y. 1983) (quoting *Robbins v. Ogden Corp.*, 490 F.Supp. 801, 811 (S.D.N.Y.1980)). A complaint which describes the nature of plaintiff's business, its dependence on certain resources, an intent on the part of defendant to interfere with plaintiff's business, and conduct which caused an injury related to plaintiff's business meets the pleading requirements. *Brokers' Assistant, Inc. v. Williams Real Estate Co., Inc.*, 646 F.Supp. 1110, 1126 (S.D.N.Y.1986).

Plaintiffs' complaint alleges that their business success enabled them to attract significant financial support from clients and friends which then gave them access to lucrative employment. Complaint at 109. Persky and Bright also maintain that defendants' conduct, which has been described at length above, directly and proximately resulted in a loss of this financial support and potential lucrative employment. *Id.* While Persky and Bright assert that defendants acted "willfully, wantonly, and with reckless indifference to others," *id.,* they have not alleged that defendants intended to interfere with plaintiffs' business with these other parties. What plaintiffs are alleging in essence is that defendants' conduct hurt their general standing within the community. This assertion alone is insufficient. Some allegation of conduct directed toward plaintiffs' relations with these specific clients and friends is required.

Defendants' motion to dismiss with respect to the claim for tortious interference with economic advantage is granted.

### G. *Copyright Infringement Claim*

■ Defendants argue that plaintiffs have in essence waived the right to advance any claim for copyright infringement by signing a standstill agreement which grants Columbia distribution rights to the films until thirty days after the entry of a judgment by this Court. The parties had also agreed to an earlier extension of these rights. Plaintiffs rely on language in the agreement stating that the agreement was "without prejudice to Persky–Bright's claims that Columbia has forfeited its claimed right to extend the terms of Columbia's distribution rights in perpetuity ..." Plaintiffs' Memorandum of Law in Opposition at 78.

In this action, however, plaintiffs are seeking to recover profits Columbia has *already* earned from the alleged copyright infringement and other monetary damages *already* incurred, Complaint at 111, not to challenge Columbia's distribution rights in perpetuity. Defendants maintain that this provision in the standstill agreement was intended to preserve Persky–Bright's right

to oppose the merits of Columbia's attempted extension of distribution rights in perpetuity in a separate declaratory judgment action. The Court finds that this is the only plausible explanation for the wording of the provision. Having granted Columbia rights to distribute the films until thirty days after this Court enters a final judgment, plaintiffs cannot now advance a claim for copyright infringement during that same period of time.

Plaintiffs' claim for copyright infringement is therefore dismissed.

### H. *Racketeer Influenced and Corrupt Organizations Act (RICO) Claim*

Plaintiffs allege violations of 18 U.S.C. §§ 1962(a), (b) & (c) of the RICO statute, and defendants challenge each alleged violation on various grounds. For the reasons described below, plaintiffs' claim is dismissed without prejudice insofar as it alleges a violation of § 1962(a). Defendants' motion to dismiss is denied insofar as it relates to the alleged violations of § 1962(b) & (c). For the sake of clarity, we shall consider the alleged violations of each RICO section in turn, and defer consideration of the one ground which relates to all the sections until the end.

#### (1) 18 U.S.C. § 1962(c)

■ 18 U.S.C. § 1962(c) provides:

"It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity ..."

According to plaintiffs' complaint, Columbia, the "person", conducted or participated in the affairs of the Partnerships, the "enterprises", through a pattern of racketeering activity. Complaint at 97. Defendants contend that plaintiffs have alleged nothing more than a typical contractual relationship and have not shown a "direct relationship" between defendants and the RICO enterprise.

There is some dispute as to which standard this Court should apply in resolving whether Columbia conducted or participated in the affairs of the Partnerships. Plaintiffs argue that in contrast to a more stringent standard adopted in other circuits, the law in the Second Circuit requires only that (1) the person was enabled to commit the predicate offenses "solely by virtue of his position in the enterprise or involvement in or control over the affairs of the enterprise," or (2) that the predicate offenses were "related to the activities of that enterprise." *United States v. Scotto,* 641 F.2d 47, 54 (2d Cir.1980), *cert. denied,* 452 U.S. 961, 101 S.Ct. 3109, 69 L.Ed.2d 971 (1981). On the other hand, defendants contend that law from other circuits, which they maintain is consistent with *Scotto,*[4] requires that the person be "involv[ed] in the operation or management of the business ..." *United States v. Mandel,* 591 F.2d 1347, 1375 (4th Cir.1979), *cert. denied,* 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980). *See also Bennett v. Berg,* 710 F.2d 1361, 1364 (8th Cir.), *cert. denied,* 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983). Since plaintiffs have pled sufficient facts to meet both standards, the Court need not decide which standard to apply or even whether these are in fact different standards.

Plaintiffs allege that the business in which the Partnerships engaged was the acquisition and production of motion pictures, "principally from (or for)" Columbia. Complaint at 4. Columbia's role, pursuant to the contracts, was to market and distribute the films on behalf of the Partnerships, thereby providing the Partnerships with their only source of income. In addition, Columbia acquired security interests in the films, controlled the payment under the promissory notes executed by the Partnerships as payment for the films, and controlled the accounting process and all the accounting records from the marketing and distribution of the films. Complaint at 16–38, 66–67, 94. Keeping in mind that ac-

quiring income from these motion pictures was the principal business of the Partnerships, it is difficult to conceive of how Columbia's role in the very process through which this income was obtained could not be seen as conducting or participating in the affairs of the Partnerships. Such conduct could also be described as involvement in the operation or management of the Partnerships.

The cases which defendants cite are easily distinguished. In *Goldman v. McMahan, Brafman, Morgan & Co.,* 706 F.Supp. 256, 261–62 (S.D.N.Y.1989), an outside accountant was alleged to have conducted the affairs of an enterprise whose goal was to either force the forfeiture of certain partnership interests or to inflict dire tax consequences on partners who maintained their interests. The Court found that the relationship between the accountant and the enterprise was no different than a typical client-accountant relationship and that the accountant could not have shared the purposes of the enterprise. *Id.* at 262. In contrast, the parties in this case did not fashion a typical contractual relationship. The contracts entitled Columbia to exercise a high level of control over the Partnerships' principal business. Furthermore, the enterprise's purpose, to generate income from the films, could have been shared by Columbia.

In *John Peterson Motors, Inc. v. General Motors Corp.,* 613 F.Supp 887, 899–90 (D.Minn.1985), the plaintiffs alleged that the person had taken a security interest in the enterprise, but the court held that such an allegation standing alone was not sufficient to establish that the person had conducted or participated in the enterprise's affairs. According to the court, the plaintiffs had to allege that the person "controlled or conducted the common, everyday affairs of [the enterprise], or that the services and facilities of [the enterprise] were regularly and repeatedly utilized to make possible the alleged racketeering activity."

---

**4.** There is some commentary suggesting that these are different standards, and that *Mandel,* the more restrictive standard of the two, is also a minority position and may no longer be valid

in one of the two Circuits which adopted it. *See* D. Smith & T. Reed, Civil RICO at ¶ 5.04[3][c]–[d], at 5–25 to 5–27 (Matthew Bender 1987).

*Id.* at 900. In this case, in addition to the security interest obtained by defendants in the films, plaintiffs allegedly exercised continuous control over business relating to the films, the principal business of the Partnerships. To the extent that the Partnerships had "common, everyday affairs," defendant can be said to have controlled or conducted them.

### (2) 18 U.S.C. § 1962(a)

■ § 1962(a) provides that:

It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... in which such person has participated as a principal ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities which affect, interstate or foreign commerce.

Plaintiffs allege that defendants gained income from a pattern of racketeering activity and that defendants, directly or indirectly, invested all or part of that income in the operation of defendants. Defendants, for their part, argue that plaintiffs have not alleged an injury resulting from the investment of income or proceeds in defendants.

The first issue for the Court to decide is whether 1962(a) requires a causal link between the investment of the income or proceeds and the injury. In *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985), the Supreme Court found that a plaintiff had standing under §§ 1962 & 1964(c) [5] only if "he ha[d] been injured in his business or property by the conduct constituting the violation." Courts are split as to what "conduct constituting the violation" means in the context of § 1962(a). Some Courts have required an injury arising from the use or investment of income derived from racketeering. *See e.g. Brown v. Scheuermann*, No. 87 Civ. 3742, 1988 WL 3089 (S.D.N.Y. Jan. 14, 1988) (WESTLAW, DCT file); *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.*, 709 F.Supp. 438, 451 (S.D.N.Y.1989); *De Muro v. E.F. Hutton*, 643 F.Supp. 63, 66 (S.D.N.Y.1986); *Galerie Furstenberg v. Coffaro*, 697 F.Supp. 1282, 1288–89 (S.D.N.Y.1988); *Vereins-und Westbank AG v. Carter*, 639 F.Supp. 620, 624 (S.D.N.Y.1986). Others have held that an injury caused by the pattern of racketeering activity will suffice. *See e.g. Wilcox v. First Interstate Bank of Oregon*, 815 F.2d 522, 528–29 (9th Cir.1987); *Mid–State Fertilizer Co. v. Exchange Nat'l Bank of Chicago*, 693 F.Supp. 666, 670–73 (N.D.Ill.1988), *aff'd*, 877 F.2d 1333 (7th Cir. 1989).

This Court has already ruled on one occasion that an injury from the use or investment of racketeering income was required. *In Re Gas Reclamation, Inc. Securities Litigation*, 659 F.Supp. 493, 511 (S.D.N.Y. 1987) (Sand, J.). The Court still believes that the language of § 1962(a) makes it quite clear that it is the use or investment of the racketeering income which violates this provision. Though the *Sedima* Court found that there was no requirement under §§ 1962 & 1964(c) of a distinct "racketeering injury," 473 U.S. at 495, 105 S.Ct. at 3284, this holding has no bearing on what constitutes a violation of § 1962(a). The Court therefore adheres to its ruling in *In Re Gas*.

Plaintiffs then argue that they have met this standard by alleging that Columbia invested or used the income derived from its pattern of racketeering activity to facilitate its own general operations and that the continuing operation of Columbia injured the plaintiffs. At least one court has rejected such an argument, finding that it would involve "a vast and unwarranted extension of the boundaries of civil RICO." *See De Muro*, 643 F.Supp. at 67. Indeed, any time a RICO enterprise which was also the defendant invested the proceeds of its first predicate act in its own operations, the commission of the second predicate act

**5.** 18 U.S.C. § 1964(c) provides a cause of action for "[a]ny person injured in his business or property by reason of section 1962."

would automatically fulfill the causation requirement. Clearly, plaintiffs must allege that they were injured specifically by the use or the investment of income derived from racketeering activity. Because plaintiffs have not done so, their claim insofar as it alleges a violation of § 1962(a) is dismissed without prejudice.

### (3) 18 U.S.C. § 1962(b)

■ 18 U.S.C. § 1962(b) provides:

It shall be unlawful for any person through a pattern of racketeering activity ... to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

Plaintiffs allege that Columbia acquired or maintained "an interest in or control of" the Partnerships through a pattern of racketeering activity. Defendants respond that Columbia did not acquire an interest in or control of the Partnerships, that plaintiffs have failed to allege an injury proximately caused by the "acquisition or maintenance" of an interest in or control of the Partnerships, and that plaintiffs have not alleged the required nexus between the pattern of racketeering and the acquisition or maintenance of this interest in or control of the Partnerships.

Plaintiffs have successfully pled that Columbia acquired an interest in or control of the Partnerships. The Second Circuit has defined an interest as a:

" 'right, title or legal share in something; participation in advantage, profit and responsibility.' Webster's Third New International Dictionary 1178 (1971). It has also been defined as '[t]he most general term that can be employed to denote a right, claim, title, or legal share in something.' Black's Law Dictionary 729 (5th ed. 1979).... Indeed, this understanding comports with the House Report's definition of 'interest' as inclusive of 'all property and interests, as broadly described, which are related to the violations.' H.R.Rep. No. 1549, 91st Cong., 2d Sess. 57, *reprinted in* [1970] U.S.Code Cong. & Ad.News 4007.''

*United States v. Jacobson*, 691 F.2d 110, 113 (2d Cir 1982) (quoting *United States v. Martino*, 681 F.2d 952, 954 (5th Cir.1982), *aff'd*, 464 U.S. 16, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983)). Defendants' role in the Partnerships clearly falls within this definition. Not only do plaintiffs allege that Columbia acquired security interests in the Partnerships' only income producing assets, they also allege that Columbia controlled the distribution of the films, controlled the flow of income to the Partnerships, and claimed the investment tax credit for the films.

Plaintiffs have alleged an injury proximately caused by the conduct prohibited by § 1962(b). The conduct which constitutes a violation of § 1962(b) is the acquisition of any interest in or control of the enterprise through a pattern of racketeering activity. Thus under the principle of *Sedima* and the holding of this Court in *In Re Gas*, plaintiff must allege that he or she was injured as a result of the acquisition of any interest in or control of the enterprise. *See also Litton*, 709 F.Supp. at 452; *Faberge, Inc. v. Wyman*, No. 82 Civ. 6915, 1987 WL16279 (S.D.N.Y. Feb. 25, 1987) (WESTLAW, DCT file). Plaintiffs' complaint alleges in detail how they were allegedly injured by Columbia's control over the accounting process, the security interests in the films, and Columbia's control over the income flow. As explained above, it was this very conduct which constituted Columbia's acquisition of an interest in and control over the Partnerships.

Finally, plaintiffs have alleged the required nexus between the pattern of racketeering and the acquisition or maintenance of an interest in or control of the Partnerships. According to the language of § 1962(b), a violation occurs when a person obtains an interest in or control of an enterprise *through* a pattern of racketeering. Defendants contend that none of the predicate acts of fraud alleged by the plaintiffs contributed to the acquisition of an interest or control. First, defendants have ignored plaintiffs' allegations that Columbia, in entering into the contracts which gave them an interest in and control over the Partner-

ships, misrepresented and intentionally failed to disclose the extent of third party participation rights in the films, misrepresented and intentionally failed to disclose the production costs of the films, and intentionally misrepresented to plaintiffs that it would do nothing to derogate from Plaintiff' ownership of the films. Complaint at 87–88. Furthermore, the conduct which defendants do acknowledge, the accounting of moneys and the valuation of Columbia's distribution options, can be considered a continuing effort to acquire control of the Partnerships.

### (4) Predicate Acts

■■■ Defendants maintain that the predicate acts for the RICO claim are all based on assertions of fraud, or more specifically mail fraud. Defendants also argue that after the dismissal of the fraud claims, plaintiffs no longer have a predicate for their RICO claims. It should be recalled, however, that the fraud claims were dismissed because they were intimately related to the breach of contract claims and wholly redundant, not because of any inadequacy in their pleading. Federal RICO claims, unlike claims for common law fraud, cannot be said to be redundant with a common law breach of contract claim. Congress' specific purposes for passing the RICO and mail fraud statutes, combined with the additional elements of these causes of action, negate this contention.

Defendants point to several cases which held that the dismissal of a cause of action for fraud deprived the plaintiff of the predicate for his RICO claims, but in each of these cases the fraud claims were dismissed because of some inadequacy in the claims themselves. *See Long Island Lighting Co. v. Transamerica Delaval, Inc.*, 646 F.Supp. 1442, 1449–50 (S.D.N.Y. 1986) (after assuming arguendo that plaintiff's fraud claim was independent of its contract claim, fraud claims dismissed on grounds of collateral estoppel); *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 18–19 (2d Cir.1983) (no valid underpinnings for predicate acts when court found as a matter of law that no claim for securities fraud could lie), *cert. denied*, 465 U.S. 1025, 104 S.Ct.

1280, 79 L.Ed.2d 684 (1989). *See also Cooperative Agricole Groupement De Producteurs Bovins De L'Quest v. Banesto Banking Corp.*, No. 86 Civ. 8921, 1989 WL 82454 (S.D.N.Y. July 19, 1989) (WESTLAW, DCT file); *Brown v. Scheuermann*, No. 87 Civ. 3742, 1988 WL 3089 (S.D.N.Y. Jan. 14, 1988) (WESTLAW, DCT file); *Morin v. Trupin*, 711 F.Supp 97, 105 (S.D.N.Y.1989). The Court must therefore revisit plaintiffs' fraud claims to determine whether they state a cause of action.

■■■ In addition to their argument that plaintiffs' fraud claims are redundant, defendants also challenge the fraud claims on the grounds of insufficiency under Fed.R. Civ.P. 9(b). Rule 9(b) provides that: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Defendants contend that the complaint is "short on specifics when it comes to 'who' said 'what' to 'whom' that is fraudulent" and that their claims are based entirely upon information or belief. Defendants' Memorandum at 50.

The Court finds no basis for the defendants' contention that plaintiffs' complaint is short on specifics. Rule 9(b) requires that defendants be given notice of what they are charged with. *Goldman v. Belden*, 754 F.2d 1059, 1070 (2d Cir.1985). Defendants must be advised of "what statements were made, when, where and by whom they were made, in what manner the plaintiff was misled, and what the defendant obtained as a consequence." *Hotel Constructors, Inc. v. Seagrave Corp.*, 574 F.Supp. 384, 388 (S.D.N.Y.1983). Plaintiffs' complaint explains for each allegation what defendants said, the time frame in which the statements were made, how the statements were misleading, and how the defendants benefited. For example, plaintiffs allege that "[i]n entering into the Agreement with Vista in December 1974 relating to 'Bite The Bullet,' Columbia falsely represented to Vista that the production cost of 'Bite the Bullet' was in excess of Five Hundred Thousand Dollars ... and after the film was completed, Columbia intentionally failed to disclose the actual production cost to Plaintiffs ..."

Complaint at 80. Plaintiffs are not required to recite the precise statement which the specific individual in the defendant corporation made on a particular date.

The fact that plaintiffs' allegations are based on information and belief also does not defeat the fraud claims. While pleadings of fraud generally cannot be based solely upon information and belief, this rule is not "rigidly enforced" where "much of the factual information needed to fill out plaintiffs complaint lies peculiarly within the opposing parties' knowledge." *DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1248 (2d Cir.1987); *Segal v. Gordon,* 467 F.2d 602, 608 (2d Cir. 1972). Under these circumstances, the pleader must still allege the facts upon which his belief is founded. *Id.* Since virtually every one of plaintiffs' allegations involves Columbia's willful failure to disclose information or efforts to conceal, it is safe to say that the factual information lies particularly within defendants' knowledge. Moreover, the contracts bestowed upon defendants dominion over the business of marketing and distributing the films. Therefore, the facts relating to this business are far more likely to have been within the knowledge of the defendants than the plaintiffs. But most significantly, plaintiffs have alleged sufficient facts to establish the basis for their information and belief.

Since plaintiffs' fraud claims pass muster under Rule 9(b) and since defendants had advanced no other challenge to the sufficiency of plaintiffs' cause of action for fraud, the Court concludes that plaintiffs have properly alleged RICO predicate acts.

## I. *Sanctions*

Defendants also move for sanctions under Fed.R.Civ.P. 11. The Court finds none of plaintiffs' claims to be frivolous, with the possible exception of the claim for copyright infringement. With respect to that claim, the Court is not prepared to conclude that "a pleading has been interposed for any improper purpose, *or* ... after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact." *Eastway Constr.* 762 F.2d at 254.

*See also Calloway v. Marvel Entertainment Group,* 854 F.2d 1452, 1469–70 (2d Cir.1988) (district courts should "avoid hindsight and resolve all doubts in favor of signer of pleading").

## III. CONCLUSION

For the reasons discussed above, plaintiffs' claim for indemnification for their tax losses is dismissed without prejudice insofar as it seeks indemnification for losses not yet incurred. Defendants' motion to dismiss the remaining "tax claims" and the claim for indemnification for the litigation expenditures on the grounds of lack of standing and lack of causation is denied. Defendants' motion for summary judgment on the basis of judicial estoppel for these same "tax claims" is denied.

Plaintiffs' fraud claims are dismissed as wholly redundant with the breach of contract claim. Plaintiffs' negligence claim is dismissed because defendants' conduct did not violate a legal duty independent of the contractual duties. Plaintiffs' claim for copyright infringement is dismissed because plaintiffs granted defendants distribution rights as part of a standstill agreement for the entire time period for which plaintiffs now seek recovery. Persky and Bright's claim for tortious interference with economic relations is dismissed because plaintiffs have failed to allege any conduct by defendants directed toward plaintiffs' relations with the specific third parties. Plaintiffs' RICO claim for a violation of 18 U.S.C. § 1962(a) is dismissed without prejudice because plaintiffs did not allege that they were injured by the use or the investment of income derived from racketeering activity.

Defendants' motion insofar as it seeks dismissal of the rescission claim, the RICO claims under 18 U.S.C. § 1962(b) & (c), and the third party beneficiary claims is denied. Defendants' motion for sanctions is also denied.

SO ORDERED.