[610 NYS2d 511]

Paul Bogoni, Respondent-Appellant, v Claire Friedlander, Appellant-Respondent, and Maidad Rabina, Also Known as Mickey Rabina, et al., Respondents-Appellants, et al., Defendant.

First Department, April 21, 1994

APPEARANCES OF COUNSEL

*Solomon P. Glushak* for Paul Bogoni, respondent-appellant.

*Marvin E. Frankel* of counsel *(Thomas F. Farley, P. C.,* attorney), for appellant-respondent.

*Maurice A. Reichman* and *Aury Bennett Stollow, P. C.,* for Maidad Rabina and others, respondents-appellants.

## OPINION OF THE COURT

RUBIN, J.

This appeal arises out of the breach of a joint venture agreement, the objective of which was to convert the subject premises, located at 251 West 92nd Street in Manhattan, to cooperative ownership. Summary judgment was granted to plaintiff Paul Bogoni against his coventurer, defendant Claire Friedlander, and affirmed by this Court on appeal *(Odette Realty Co. v DiBianco,* 170 AD2d 299). Bogoni and Friedlander have stipulated to a settlement resolving their dispute, and so much of the judgment as awards damages to plaintiff against Friedlander for breach of the joint venture agreement, directs that she account to plaintiff for rents and proceeds received in connection with the operation of the premises and directs dissolution of Odette Realty Co. is not subject to this appeal.

At issue is the sufficiency of the proof adduced at trial to support an award of $825,000 against defendants Maidad Rabina, Rabina Realty and 251 West 92nd Corp., a corporation formed by Rabina to take title to the premises (collectively the Rabina defendants), on the ground that Maidad Rabina induced Friedlander to breach the joint venture agreement with plaintiff. Also at issue is the propriety of an order directing defendant 251 West 92nd Corp. to convey title to the premises to the joint venturers as tenants in common. Defendant Friedlander appeals from so much of the judgment as directs her to pay $891,980 in closing costs and $1,104,476 in mortgage payments in connection with the voided transfer of title to the Rabina defendants on their cross claim against her for indemnity.

■■ This Court concludes that the record is insufficient to sustain the finding that defendant Maidad Rabina induced a breach of the joint venture agreement with Claire Friedlander. As to the validity of the sale of the subject premises to 251 West 92nd Corp. by Odette Realty Co., the record discloses that Friedlander possessed actual authority to effect the transfer of title. Moreover, she had apparent authority, as a partner in Odette, to convey the premises on its behalf. In any event, plaintiff is also equitably estopped, by his own represen-

tations, to deny that Friedlander had authority to convey good title on behalf of Odette.

FACTS

The facts of this matter are reasonably straightforward, if somewhat unusual. Plaintiff Bogoni purchased the interests of all the partners of defendant Odette Realty Co. except that of Claire Friedlander, who held 45% of the partnership. Pursuant to the terms of a financing agreement dated January 4, 1985 with TCF National Properties, Inc., TCF extended a loan in the amount of $4.12 million to enable plaintiff to acquire the interests of the other partners. The loan was secured by the acquired interests and conditioned upon the signing of an agreement to convert the premises to cooperative ownership within 60 days. Accordingly, plaintiff and Friedlander executed a joint venture agreement on February 21, 1985, reciting that they own the subject premises "as tenants in common (Friedlander owns 45%, Bogoni owns 55%)" and that they will "use their best efforts in co-operating with each other to expedite the conversion of the premises to co-op ownership."

In connection with his acquisition of the assets of the partnership, plaintiff prepared an amended business certificate for Odette Realty Co., purporting to substitute himself as a partner. Significantly, the certificate was neither signed by Claire Friedlander nor filed with the County Clerk. Plaintiff further purported to convey title to the subject premises from the partnership to himself and Friedlander, as tenants in common. The quitclaim deed dated December 16, 1985 likewise bears only plaintiff's signature.

The recording of the deed came to the attention of Friedlander's attorney, who protested that it was "fraudulent and illegal". Counsel's letter dated January 23, 1986 states that the absence of his client's signature on the amended business certificate renders it null and void pursuant to General Business Law § 130 (1) (a), (b); (3). The letter, addressed to Bogoni's attorney, also cites the Partnership Law § 40 (7), which provides, "No person can become a member of a partnership without the consent of all the partners" and demands that title to the premises be restored to Odette Realty Co. To this end, Bogoni and Friedlander executed a deed dated February 11, 1986, conveying the property back to Odette.

In March 1986, a noneviction plan to convert the premises to cooperative ownership was filed with the New York State

Attorney-General's office. The plan was rejected on September 11, 1986. In the interim, in May, plaintiff commenced an action against Friedlander seeking to compel her to convey title to the premises to the joint venture.

The relationship between the joint venturers apparently deteriorated further and, on April 18, 1988, Friedlander executed a contract on behalf of Odette Realty Co. to sell the premises to Maidad Rabina. This contract was not in recordable form. On May 24, 1988, a "formal contract" was signed and the sale closed. The deed, however, was not recorded until June 14. The record does not reflect the reason for the unusual procedures employed in the transaction, but the contract was presumably recorded to protect the purchaser between closing and the recording of the deed.

Plaintiff thereafter amended his complaint to add a cause of action against Rabina for tortious interference with contractual relations. The case was tried before a jury, which returned a special verdict consisting of nine interrogatories, including an advisory verdict on the question of whether or not plaintiff acquired status as a partner in Odette.

### THE TORT CLAIM

It is apparent from a review of the transcript that, at the time the court instructed the jury prior to the commencement of deliberations, no determination had been made, as a matter of law, whether the date of contract or the date of closing would be dispositive as to Mr. Rabina's knowledge of the February 21, 1985 joint venture agreement. The jurors were therefore asked to assess the state of Mr. Rabina's awareness on both occasions. In answer to questions four and five on the special verdict sheet, the jury found that on April 18, 1988, the date on which the contract of sale was executed, Mr. Rabina had no knowledge of the joint venture agreement between Paul Bogoni and Claire Friedlander or of their lawsuit disputing the nature of the ownership of the premises. However, the jury also found that by May 24, 1988, the date title closed, Mr. Rabina had become aware of both the joint venture agreement and the resultant lawsuit. Finally, the jury answered in the affirmative interrogatory number nine, which asked, "Do you find that the Rabina defendants induced Miss Friedlander to breach or conspired with her to breach the February 21, 1985 agreement?"

On appeal, the Rabina defendants advance the same argu-

ment utilized in their oral motions to dismiss this cause of action at the close of plaintiff's case and, again, after the verdict was returned, both of which were denied by Supreme Court. They contend that the question of whether they induced Friedlander's breach must be determined with respect to the earlier date, when the contract of sale was first signed. Therefore, they argue, because the jury determined that Rabina had no knowledge of the joint venture agreement on this date, an essential element of the tort is lacking. Plaintiff, in opposition, argues only that the Rabina defendants did not object to the court's instructions to the jury.

The elements of the tort of intentional interference with contractual relations are (1) the existence of a contract, enforceable by the plaintiff, (2) the defendant's knowledge of the existence of that contract, (3) the intentional procurement by the defendant of the breach of the contract, and (4) resultant damages to the plaintiff *(Israel v Wood Dolson Co.,* 1 NY2d 116, 120). Where procurement of the breach by defendant is established, the burden shifts to the defendant to plead and prove justification for inducing the breach *(Fallon v Wall St. Clearing Co.,* 182 AD2d 245, 250; *State Enters. v Southridge Coop. Section 1,* 18 AD2d 226, 227-228). Later cases pose this issue in terms of whether the defendant "intentionally and improperly interferes with the performance of a contract", as stated in Restatement (Second) of Torts § 766, rather than whether interference with the contract is " 'without justification' " *(Guard-Life Corp. v Parker Hardware Mfg. Corp.,* 50 NY2d 183, 189). In any event, where the plaintiff cannot demonstrate the deliberate procurement of the breach by the defendant, the complaint is subject to summary dismissal *(Gregoris Motors v Nissan Motor Corp.,* 80 AD2d 631, *affd* 54 NY2d 634).

In denying the Rabina defendants' posttrial motion to dismiss the action against them, Supreme Court noted that the jury was instructed that "there were two different operative dates, April 18, 1988 and May 24, 1988. The jury's verdict was based on a finding that the Rabinas had knowledge [of the joint venture agreement between plaintiff and Friedlander] on May 24, 1988 which would allow for a finding of tortious interference with a contract right."

The jury was indeed asked to find whether Maidad Rabina knew of the existence of the joint venture agreement on both dates. However, at no time was the jury instructed as to the significance of Rabina's lack of knowledge on April 18, 1988.

In response to the Rabina defendants' motion to set aside the verdict as to interrogatory number nine, finding them guilty of inducing breach of the joint venture agreement, the court reserved decision and indicated, as a preliminary reaction, that "this is an inconsistent verdict."

The court's initial reaction was quite accurate. As a matter of law, unless the contract of sale executed by Friedlander and Rabina on April 18, 1988 was for some reason invalid, the jury verdict with respect to interference with contract rights is inconsistent with its finding that Rabina had no knowledge of the joint venture agreement between plaintiff and Friedlander as of that date. There is no evidence to suggest that the contract of sale was not enforceable, nor did plaintiff ever argue as much. Rather, he asserted at trial that the formal contract and the closing, which both took place on May 24, 1988, were part of a "continuing breach" of the joint venture agreement by Friedlander. Plaintiff now contends, on appeal, that defendant 251 West 92nd Corp., by taking assignment of the contract from defendant Rabina on May 24, 1988, "was a bad faith purchaser, whose principal and sole owner, Rabina, was then acting in like bad faith."

This Court has had prior occasion to emphasize that a party cannot be further induced to render performance of an act which he is contractually obligated to perform *(Megaris Furs v Gimbel Bros.,* 172 AD2d 209, 212-213; *IBM Credit Fin. Corp. v Mazda Motor Mfg. [USA] Corp.,* 152 AD2d 451, 453). Having bound herself to convey title to the subject premises on April 18, Friedlander could not thereafter, on May 24, 1988, be induced to breach the joint venture agreement with plaintiff Bogoni.

On appeal, plaintiff has abandoned his novel theory of a "continuing breach" by Friedlander. It suffices to say that the operative consideration for tortious interference with contractual relations is the state of a defendant's knowledge at the time breach of a valid contractual obligation is induced. The duration of the ensuing breach is immaterial.

Likewise, the assignment of the contract of sale by Rabina to the corporation he controls has no effect on the obligation by Friedlander to convey title to the premises, whether that obligation runs to the original contract vendee or his assignee. More significantly, the assignment of the contract does not affect the obligation of Rabina to consummate purchase of the property. Merely because the contract of sale was amended on

the date of closing to encompass additional details and to comply with the formalities to make it recordable (Real Property Law § 294) does not render the original contract of sale void *ab initio.* The amendment of a contract is specifically provided for in General Obligations Law § 5-1103, and it should be abundantly clear that modification is not tantamount to rescission, although early case law created some confusion on this point *(see, Schwartzreich v Bauman-Basch, Inc.,* 231 NY 196 [1921]; *see also, Watkins & Sons v Carrig,* 21 A2d 591 [Sup Ct NH, 1941]). Finally, plaintiff's insinuation that the April 18 contract of sale should be considered void because it was not in recordable form is disingenuous. Real Property Law § 294 (3) only renders an unrecorded contract void as against a subsequent purchaser from the same vendor who first records the contract or conveyance *(La Marche v Rosenblum,* 50 AD2d 636). It does not require that all contracts be recorded, but simply affords protection to those who avail themselves of the statute *(see, Varon v Annino,* 170 AD2d 445).

In order for plaintiff to make out a cause of action for tortious interference with his joint venture agreement with Friedlander, he is required to demonstrate that Friedlander was induced by Rabina to breach that agreement as of April 18, 1988, the date she executed the contract to convey the premises. In view of the jury's finding that Rabina had no knowledge of the joint venture agreement on that occasion, an essential element of the tort is lacking, and the evidence is insufficient to sustain the verdict in favor of plaintiff against the Rabina defendants.

### OWNERSHIP OF THE PREMISES

■ Defendant 251 West 92nd Corp. appeals from so much of the judgment as voided sale of the property by Odette Realty Co. to the corporation. Disposition of this aspect of the appeal turns on the power of Friedlander, as a partner in Odette, to convey title to the premises, as well as on the sufficiency of the evidence with respect to plaintiff's membership in the partnership. The jury rendered an advisory determination that plaintiff was a partner in Odette Realty Co. Supreme Court decided that the evidence was sufficient to support this result and accepted the finding. The court therefore ruled that "since plaintiff was a partner in Odette and the property was sold without his authorization, the sale is void *(see,* Partnership Law §§ 20, 21)."

This reasoning is not consistent with the statute, as it applies to the facts of this case. With respect to property held in the name of the partnership, Partnership Law § 21 (1) provides, insofar as relevant, that "any partner may convey title to such property by a conveyance executed in the partnership name; but the partnership may recover such property unless the partner's act binds the partnership under the provisions of subdivision one of section twenty". Section 20 (1) provides that, as an agent of the partnership, "the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, *and* the person with whom he is dealing has knowledge of the fact that he has no such authority" (emphasis added).

Plaintiff advances the unusual argument that the sale of realty by Odette Realty Co. "is not apparently for the purpose of carrying on the business of the partnership in the usual way" and that the sale is therefore not binding upon the partnership without the authorization of all the other partners pursuant to Partnership Law § 20 (2). However, even giving credence to the illogical contention that it is unusual for a realty company to engage in the sale of realty, a right specifically granted pursuant to paragraph 12 of the subject partnership agreement, Friedlander, as the sole partner remaining in Odette, was clearly authorized to make the conveyance. On a prior appeal of this matter, this Court held: "Neither the withdrawal nor the sale of the respective interests, of four partners resulted in the dissolution of the Odette partnership, nor entitled Friedlander to an accounting, where the initial partnership agreement specifically provided that neither the death nor withdrawal of any partner would effect a dissolution thereof and that a partner may sell his or her interest without restriction or limitation" *(Odette Realty Co. v DiBianco,* 170 AD2d 299, 300, *supra).* In view of this ruling, the continuation of the partnership and, thus, the power of Friedlander to convey title to the premises, is law of the case.

As to the ability of the partnership to regain title to the property, defendant 251 West 92nd Corp. argues that, despite the jury's finding that its principal knew of the joint venture agreement with plaintiff on the date the premises were conveyed, there is simply no evidence to controvert Friedlander's status as the sole remaining partner of Odette Realty Co.

Therefore, it argues, irrespective of Friedlander's actual authority (which, as sole remaining partner, was absolute), there was no source of information which would have caused Rabina, as purchaser, or Friedlander, as seller, to entertain any doubt about her authority to dispose of the property.

Plaintiff's response to this argument is an attempt to evade consideration of the sufficiency of evidence supporting the finding that he was a partner in Odette. He contends, "Once Bogoni was adjudicated a partner in Odette, it was irrelevant whether Rabina thought or knew he was or was not a partner when the Rabina defendants bought the property." Not only is plaintiff's contention contrary to statute, which upholds a transfer of title by a partner possessing the apparent authority to make it (Partnership Law § 4 [3]; § 20 [1]), it discounts formal judicial admissions made by plaintiff which had not been amended as of the time the property was conveyed to the Rabina defendants.

At the outset, it should be noted that the terms of the joint venture agreement exclude the notion that plaintiff was a partner in Odette Realty Co. The joint venture agreement recites that Claire Friedlander and Paul Bogoni own the subject premises "as tenants in common", whereas partners are co-owners of partnership property as tenants in partnership (Partnership Law § 51 [1]), which is not equivalent to tenancy in common (see, Kraus v Kraus, 250 NY 63). As Partnership Law § 11 (2) provides, ownership by tenancy in common "does not of itself establish a partnership, whether such co-owners do or do not share any profits made by the use of the property."

It should be noted that plaintiff has consistently acted contrary to the terms of the partnership agreement governing Odette. It is well settled that, as between themselves, the powers, duties and liabilities of the partners are determined by the partnership agreement (Lanier v Bowdoin, 282 NY 32, 38, rearg denied 282 NY 611). Plaintiff ignored paragraph 8 of the agreement by pledging his interest in the partnership to secure the loan from TCF National Properties, Inc. without obtaining consent of all other partners, viz., Friedlander. As a result, two of the outgoing partners required plaintiff to indemnify them against any loss they might sustain as a consequence of this perceived omission. Plaintiff also ignored paragraph 16 of the agreement, requiring that any dispute among the partners be submitted to arbitration, by his commencement of this action. Although Friedlander did not seek

to compel arbitration of the disputed property transfer and it is not at issue on appeal because plaintiff and Friedlander have now settled their dispute, plaintiff's assertion that he was not a partner in Odette effectively deprived Friedlander of her right under the partnership agreement to seek resolution of the dispute before an arbitrator. Plaintiff's actions in derogation of the rights and obligations prescribed by the partnership agreement as well as the express provisions of the joint venture agreement with Friedlander clearly indicate that plaintiff did not consider himself to be a partner in Odette Realty Co. from the very outset.

This sentiment was reciprocated by Claire Friedlander. Bogoni's abortive attempt to transfer the property to the joint venturers as tenants in common, the unequivocal rejection of his authority to act for the partnership and Friedlander's refusal to account to plaintiff for proceeds received by the partnership refute any suggestion that Bogoni was accepted by her as a partner in Odette (Partnership Law § 40 [7]; *Rapoport v 55 Perry Co.,* 50 AD2d 54, 57). Moreover, in an affidavit dated October 14, 1988, some five months after the property was sold by Odette, plaintiff asserted, "Friedlander cannot be permitted to profit from her rejection of me as a partner and by her refusal to wind up Odette—all by way of scheming to evade her obligations and liabilities under the joint venture agreement." In ruling on plaintiff's application seeking, *inter alia,* to amend his second amended complaint, Supreme Court, in an order dated November 15, 1988, denied plaintiff's motion insofar as it sought to add a cause of action to set aside the sale, stating, "Plaintiff has never alleged that he is a partner in Odette Realty, but rather the entire basis of his claim is that he purchased the interests of all partners except Friedlander and that he and Friedlander subsequently entered into an agreement to own the property as tenants in common."

In fact, the court's assessment understates the situation. In his second amended complaint verified December 17, 1987, plaintiff acknowledged, without qualification, that "the only 'partner' remaining in Odette was Friedlander." Since this assertion by plaintiff Bogoni was not made on information and belief, it must be regarded for all purposes as having been made upon his own knowledge (CPLR 3023; *Jack C. Hirsch, Inc. v Town of N. Hempstead,* 177 AD2d 683, 684). Moreover, this statement in a pleading constitutes a formal judicial admission (Richardson, Evidence § 216 [Prince 10th ed]; Fisch,

Evidence § 803 [2d ed 1977]) which, even though subject to a subsequent, valid amendment, remains evidence of the facts admitted *(Resseguie v Adams,* 55 AD2d 698, 699, *affd sub nom. Locator-Map, Inc. v Adams,* 42 NY2d 1022, citing *Levy v Delaware, Lackawanna & W. R. R. Co.,* 211 App Div 503). Even allowing that CPLR 3025 (b) does not bar a plaintiff from reversing his position on a crucial fact to assert a position entirely contrary to that originally advanced, the admission contained in plaintiff's second amended complaint (which had not been amended prior to conveyance of the property) is entitled to great weight *(Vanderbilt v Vanderbilt,* 28 AD2d 861). Finally, even if plaintiff's untimely change of position were to be deemed sufficient evidence of his participation in the Odette partnership, Supreme Court's conclusion to that effect would be against the weight of the evidence *(Dodge v Richmond,* 10 AD2d 4, 11, *affd* 8 NY2d 829). Both the timing of plaintiff's assertion of partnership rights and the disparity with his earlier position, as expressed in pleadings up to and including the second amended complaint, render his assertion on this point incredible *(see, Matter of Goldstick,* 177 AD2d 225, 243-244, *mod on other grounds* 183 AD2d 684).

A word is in order regarding the function and scope of an amendment of pleadings pursuant to CPLR 3025. The purpose of this procedural device is to permit the plaintiff to amend his theory of recovery to comply with the facts as they unfold, not to permit the plaintiff to alter his representation of material facts to best suit his theory of recovery and thereby overcome defenses raised in opposition. As stated by one leading commentator, "CPLR 3025 (b) rejects the old practice, applicable in law cases, restricting the action to facts in existence when it was first brought, and instead adopts for all actions the equity practice of allowing the case to take cognizance of facts arising right up to the trial" (Siegel, NY Prac § 237, at 353 [2d ed]). Appropriate in the factual context of this case, another leading commentator notes that amendment of pleadings is not a vehicle that can be utilized to relieve a party from the consequences of prevarication *(Du Bose v Velez,* 63 Misc 2d 956, 958 [Younger, J.]; *see also, Matter of Schwartz v Scott & Co.,* 25 AD2d 596).

The propriety of amending the complaint is not raised as an issue on appeal. However, as *Du Bose v Velez* emphasizes, a judicial admission is binding and conclusive *(supra,* at 959), "unless modified or relieved in the discretion of the court" (Richardson, Evidence § 216 [Prince 10th ed]). In this event,

the prior complaint remains admissible as an informal judicial admission, the circumstances of which may be explained at trial (Fisch, Evidence § 804 [2d ed]).

Supreme Court disregarded the inconsistent pleadings as being mere "inconsistent statements" which the jury resolved in favor of plaintiff and proceeded to adopt the jury's advisory finding that plaintiff was a partner in Odette. While CPLR 3025 (b) furnishes a device to relieve a party from the consequences of an admission in the sound discretion of the court, what is significant in this case is that plaintiff did not obtain nor seek relief from his admission until *after* the property had been conveyed in reliance on his status as a mere tenant in common and a nonpartner in Odette *(see, Levy v Delaware, Lackawanna & W. R. R. Co.,* 211 App Div, *supra,* at 506).

The absurdity of plaintiff's position regarding the validity of the conveyance of the premises is transparent. At a time when he was asserting, in sworn pleadings before Supreme Court, that he had been rejected as a partner in Odette by Friedlander, he nevertheless claims that Rabina should somehow have divined that the subject premises were not within the authority of Friedlander to convey because plaintiff—in the belatedly asserted capacity of a partner in Odette—had not given his consent to the sale.

Plaintiff is estopped to deny that the facts are other than as he represented them to be at the time of the property transfer, both in the papers and pleadings before the court at the time of the sale and in the joint venture agreement with Friedlander, in which he declared his interest in the premises to be that of a tenant in common. A classic case of equitable estoppel is made out. Rabina changed his position in reliance upon a representation of Bogoni's status that operates to bar plaintiff from disavowing its truth. Regardless of plaintiff's actual capacity, having induced Rabina to rely on Friedlander's authority as sole partner in Odette to convey title to the premises, plaintiff will not be heard to assail her authority to bind the partnership to the transfer and to deprive Rabina of the benefit of his bargain.

Accordingly, the judgment of the Supreme Court, New York County (Myriam J. Altman, J.), entered on or about October 30, 1992, after jury trial, which, *inter alia,* directed defendant Odette Realty Co. to convey the premises to plaintiff and Friedlander, as tenants in common; awarded plaintiff $825,000 damages against defendants Maidad Rabina, Rabina Realty

and 251 West 92nd Corp. and $1 in punitive damages against defendant Maidad Rabina for tortious interference with plaintiff's joint venture agreement with Friedlander; and awarded the Rabina defendants $1,996,456 compensatory damages ($891,980 in closing costs and $1,104,476 in mortgage payments) against Friedlander, should be reversed, to the extent appealed from, on the law, without costs, and the premises declared the property of 251 West 92nd Corp.

SULLIVAN, J. P., Ross and NARDELLI, JJ., concur.

Judgment, Supreme Court, New York County, entered on or about October 30, 1992, reversed, to the extent appealed from, on the law, without costs, and the premises declared the property of 251 West 92nd Corp.