Claire FRIEDLANDER, Plaintiff,

v.

Daniel RHOADES and Norma Rhoades and Rhoades and Rhoades, P.C. and Does 1 Through 20, inclusive, Defendants.

No. 96 Civil 2726 (DAB).

United States District Court, S.D. New York.

April 28, 1997.

Law Office of Melvin Robert Shaw, New York City, for Plaintiff; Melvin Robert Shaw, of counsel.

Daniel Rhoades, White Plains, NY, pro se and for Norma Rhoades and Rhoades and Rhoades, P.C.; Daniel Rhoades, of counsel.

## MEMORANDUM AND ORDER

BATTS, District Judge.

Before the Court is the motion of Defendants Daniel Rhoades ("Daniel"), Norma Rhoades ("Norma"), and Rhoades and Rhoades, P.C. ("law firm") (collectively the Rhoades Defendants), to dismiss Plaintiff's civil Racketeer Influenced and Corrupt Organizations Act claim, 18 U.S.C. § 1961 *et seq.* ("RICO"), pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. The Rhoades Defendants argue that the Plaintiff's Complaint fails to state a valid RICO claim and that the action is barred by the statute of limitations. For the reasons that follow, Defendants' motion is GRANTED in its entirety.

### I. BACKGROUND

Plaintiff is a former partner of a New York General Partnership known as Odette Realty Company ("Odette"). (Compl. ¶ 18.) Defendants Daniel and Norma are admitted to practice law in New York State, (Compl. ¶¶ 8, 9), and own, control, and operate Defendant law firm, a New York professional corporation engaged in the practice of law within New York State. (Compl. ¶¶ 10–13.)

Plaintiff alleges that on or about July 1986, the Rhoades Defendants began representing Plaintiff and continued to represent her in various legal matters until December 1991. (Compl. ¶ 14.) At the time the Rhoades Defendants were hired, they represented to Plaintiff that they were experienced in the

practice of law, "possessed a high degree of skill and legal acumen," would represent Plaintiff in a competent, professional and ethical manner, and would charge Plaintiff fair and reasonable hourly fees. (Compl. ¶¶ 15–16.)

In February 1985, Plaintiff entered into a written agreement with Mr. Paul Bogoni ("Bogoni"), who owned the partnership interests in Odette not held by Plaintiff, to conduct a joint venture for the conversion of a New York City apartment building owned by Odette into cooperative ownership. (Compl. ¶¶ 19–20.) Problems grew out of the agreement and Plaintiff hired the Rhoades Defendants to represent and assist her in terminating, modifying or eliminating the terms and obligations imposed upon Plaintiff by the agreement. (Compl. ¶ 21.) Plaintiff alleges that Daniel told her at that time, that he had "special expertise" and could "fully relieve plaintiff from all obligation under said agreement with Bogoni, and render such agreement null, void and of no further effect." (Compl. ¶ 22.)

The Rhoades Defendants advised Plaintiff to violate the agreement by interfering with the conversion of the building to cooperative ownership. (Compl. ¶ 27.) Bogoni brought suit and the Supreme Court of the State of New York enjoined Plaintiff from interfering in the conversion of the building to cooperative ownership. (Compl. ¶ 29.) The Rhoades Defendants advised Plaintiff to violate the court injunction. (*Id.*)

On or about January 1988, the Rhoades Defendants introduced Plaintiff to Mr. Maidad Rabina ("Rabina") for the purpose of selling the New York City property owned by both Plaintiff and Bogoni. (Compl. ¶ 33.) Plaintiff alleges that the Rhoades Defendants arranged for the sale and financing of the property at an amount unfavorable to the Plaintiff and advised her not to obtain Bogoni's consent to the sale because it was not necessary. (Compl. ¶¶ 34, 38.) Plaintiff and Rabina entered into an agreement where Rabina would pay $7.2 million to Plaintiff with $900,000.00 at closing and the remaining $6.3 million to be financed with a purchase money mortgage. (Compl. ¶ 34.) Plaintiff transferred the property to Rabina on May 24, 1988, (Compl. ¶ 37), but, as Defendants had advised, her neighborhood Jacoby & Meyers handled the closing. (Compl. ¶¶ 35–36.)

Plaintiff also alleges that the Rhoades Defendants collected the mortgage payments from Rabina for the benefit of Plaintiff but that none of the 20 monthly payments of $52,500.00 were ever paid to her. The Rhoades Defendants have refused repeated requests to pay Plaintiff the money. (Compl. ¶¶ 54–57.)

Bogoni again sued Plaintiff in the Supreme Court of the State of New York seeking reconveyance of the property. (Compl. ¶ 46.) The Rhoades Defendants again represented Plaintiff during the trial, and advised Plaintiff not to attend the trial and to commit perjury. (Compl. ¶¶ 47, 50, 51.) Furthermore, the Rhoades Defendants advised Plaintiff not to pay Federal or New York State income taxes until all litigation was resolved, which advice she followed. (Compl. ¶¶ 61–62.) Plaintiff lost at trial and the court entered judgment in favor of Bogoni against Plaintiff for the amount of $9 million and another judgment in favor of Rabina for $1.5 million.[1] (Compl. ¶ 46.)

Plaintiff claims that she paid more than $200,000.00 in legal fees to the Rhoades Defendants from 1985 through 1991. (Compl. ¶¶ 64, 69.) Plaintiff alleges that she did not discover or learn about the Rhoades Defendants' fraudulent actions until some time after January of 1992. (Compl. ¶¶ 26, 42.)

Finally, Plaintiff alleges that on or about June 1987 and continuing through June 30, 1993, the Rhoades Defendants acquired $164,900.00 from an escrow account set up for the sale of another cooperative apart-

---

**1.** The Supreme Court entered judgment against Rabina in the amount of $1.5 million. Rabina appealed this judgment. The Appellate Division reversed, finding that Rabina had no knowledge of the joint venture agreement when his contract of sale was executed with the Plaintiff. Accordingly, the court found that he could not have induced a breach of the agreement between Bogoni and Plaintiff. The Appellate Division then entered judgment against the Plaintiff for the $1.5 million. *Bogoni v. Friedlander,* 197 A.D.2d 281, 610 N.Y.S.2d 511 (1st Dep't 1994).

ment. (Compl. ¶ 70.) Plaintiff has demanded since June 30, 1993, the proceeds of the escrow account, but the Rhoades Defendants have refuse to turn over the money. (Compl. ¶¶ 72–73.)

The Rhoades Defendants deny Plaintiff's allegations and now move to dismiss the Complaint pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. In addition, they argue that the Court should not grant Plaintiff's request to amend the Complaint because it would be futile.

## II. DISCUSSION

Plaintiff alleges three claims against the Rhoades Defendants under 18 U.S.C. § 1962(b), (c), and (d).

"On a motion to dismiss under Rule 12(b)(6), the court must accept as true the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff." *Bolt Elec., Inc: v. City of N.Y.*, 53 F.3d 465, 469 (2d Cir.1995) (citations omitted); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The Court will grant such a motion only if after viewing plaintiff's allegations in a most favorable light, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Walker v. City of N.Y.*, 974 F.2d 293, 298 (2d Cir.1992), *cert. denied*, 507 U.S. 961, 113 S.Ct. 1387, 122 L.Ed.2d 762 (1993). Accordingly, the factual allegations set forth and considered herein are presumed to be true for the purpose of deciding the motions to dismiss.

## A. RICO

■■■ Under § 1962, a person commits a RICO violation when he (a) invests income derived from a pattern of racketeering in an enterprise; or (b) controls an enterprise through a pattern of racketeering activity; or (c) participates in an enterprise through a

pattern of racketeering activity; or (d) conspires to violate subsections (a), (b) or (c). 18 U.S.C. § 1962. The purpose of civil RICO liability does not include deterrence of all unlawful acts but only of those set out in Section 1961. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 232, 109 S.Ct. 2893, 2895, 106 L.Ed.2d 195 (1989); *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21 (2d Cir.1990); *Mathon v. Marine Midland Bank, N.A.*, 875 F.Supp. 986, 1001 (E.D.N.Y. 1995). Furthermore, "alleged RICO violations must be reviewed with appreciation of the extreme sanctions it provides, so that actions traditionally brought in state courts do not gain access to treble damages and attorneys fees in federal court simply because they are cast in terms of RICO violations." *Mathon*, 875 F.Supp. at 1001.

### 1. *Section 1962(c )*

To a state a civil RICO cause of action under § 1962(c), Plaintiffs must establish that the Defendants, conducted or participated in the conduct of an enterprise's affairs, through a pattern of racketeering activity, that caused injury to the Plaintiffs' business or property. *See* 18 U.S.C. § 1962(c);[2] *Sedima, S.P.R.L v. Imrex, Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985); *McLaughlin v. Anderson*, 962 F.2d 187, 190 (2d Cir.1992).

### a. **Enterprise**

■■■ An enterprise and the persons conducting the affairs of an enterprise must be distinct. *See Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1063 (2d Cir.1996); *R.C.M. Executive Gallery Corp. v. Rols Capital Co.*, 1997 WL 27059, at *7 (S.D.N.Y. Jan.23, 1997). A corporate entity, such as the law firm, cannot be both the person who conducts the affairs of the enterprise and the enterprise itself. *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir.1994); *R.C.M.*, 1997 WL 27059 at *7. A corporate entity can only form with

---

**2.** Section 1962(c) provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or partici-

pate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).

others to compose an enterprise if it is sufficiently distinct. *Riverwoods,* 30 F.3d at 344; *R.C.M.,* 1997 WL 27059 at *7. This requirement may not be circumvented by alleging that the corporate entity's agents or employees and the corporate entity itself form the RICO enterprise that carries out its regular business. *Riverwoods,* 30 F.3d at 344; *R.C.M.,* 1997 WL 27059 at *7.

■ Plaintiff not only fails to allege an enterprise that is different from the law firm and the firm's partners, but in the RICO Statement[3] the Plaintiff states "Defendants in this action are the enterprise itself. Daniel and Norma Rhoades are the alter egos of Rhoades and Rhoades, P.C. and they have become a single entity and enterprise." (RICO Stmt. ¶ 6(E).) Accordingly, by her own RICO Statement, Plaintiff sets forth a defect fatal to her RICO claim.

### b. Racketeering Acts

■ Furthermore, Plaintiff's claim fails for lack of specificity. Plaintiff alleges that the Racketeering Acts consists of mail and wire fraud, obstruction of justice[4] and tampering with a witness.[5] There are no facts in either the RICO Statement or the Complaint that would fulfill the elements of either crime of obstruction of justice or tampering with a witness. The mail and wire fraud racketeering acts pled are completely devoid of any specificity and cannot meet the requirements of Rule 9(b).[6] (Compl.; RICO Stmt. ¶¶ 5(B), (C).)

### 2. *Section 1962(b)*

Section 1962(b) prohibits a person from acquiring or maintaining an interest in or control in an enterprise through a pattern of racketeering activity. It is only logical that the Plaintiff having failed to allege an appropriate enterprise, that this cause of action must fail as well. *See, e.g., American Buying Ins. Serv. v. S. Kornreich* & Sons, 944 F.Supp. 240, 246 (S.D.N.Y.1996). If no enterprise has been properly alleged, there can be no entity in which to invest or to control. Furthermore, assuming arguendo that the law firm was not a Defendant and could be found distinct enough from Daniel and Norma Rhoades, which it cannot,[7] then the pleadings are insufficient to show a connection between the alleged interest in the law firm and a pattern of racketeering activity. *See, e.g., Protter v. Nathan's Famous Sys., Inc.,* 925 F.Supp. 947, 955 (E.D.N.Y.1996); *Vista Co. v. Columbia Pictures Indus., Inc.,* 725 F.Supp. 1286, 1300 (S.D.N.Y.1989). Furthermore, there is no allegation of the injury suffered as a result of an investment in any enterprise. *Vista,* 725 F.Supp. at 1300.

### 3. *Section § 1962(d)*

■ Plaintiff must prove that the Defendants " 'embraced the objective of the alleged conspiracy,' and agreed to commit two predicate acts in furtherance thereof." *United States v. Viola,* 35 F.3d 37, 43 (2d Cir.1994) (quoting *United States v. Neapolitan,* 791 F.2d 489, 495 (7th Cir.1986), *cert. denied,* 479 U.S. 939, 107 S.Ct. 421, 93 L.Ed.2d 371 (1986)), *cert. denied,* 513 U.S. 1198, 115 S.Ct. 1270, 131 L.Ed.2d 148 (1995); *Hecht,* 897 F.2d at 25; *Hayden v. Paul, Weiss, Rifkind, Wharton & Garrison,* No. 88 Civ. 8048, 1997 WL 76674, at *6 (S.D.N.Y. Feb. 20, 1997). Once again Plaintiff relies on conclusory statements both in the Complaint and in the

---

**3.** A RICO Statement is a document required by the Court in actions alleging RICO violations to assist the Court in determining the validity of the Plaintiff's claims. The Court deems the RICO Statement as an extension of the Complaint and will refer to it to assist the Plaintiff in establishing her claims.

**4.** 18 U.S.C. § 1503.

**5.** 18 U.S.C. § 1512.

**6.** Rule 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.

Malice, intent, knowledge, and other condition of a person may be averred generally." Fed. R.Civ.P. 9(b). "[A]llegations of predicate mail and wire fraud acts should state the contents of the communications, who was involved, where and when they took place, and why they were fraudulent." *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1176 (2d Cir.1993).

**7.** Plaintiff, although previously claiming the enterprise and the Defendants were one and the same, alleges in her RICO Statement that the enterprise that Daniel and Norma controlled was the law firm. (RICO Stmt. ¶ 12.)

RICO Statement. Plaintiff does not allege more than that the Defendants "conspired." In the RICO Statement, Plaintiff's second chance to detail the particulars of the allegations, she begins to talk about a conspiracy between the Defendants and Rabina, who was found by the Appellate Division not to have known about any fraud in the property transfer. Plaintiff does not even allege that there was an agreement, nor does she allege any actionable predicate acts which the Defendants allegedly agreed to commit.

### 4. Statute of Limitations

Furthermore, the Plaintiff's action, under § 1962(b)–(d), is barred by the statute of limitations. RICO claims have a four year statute of limitations. *Agency Holding v. Malley–Duff & Assoc., Inc.,* 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). The statute of limitations begins to run "when plaintiff discovers or should have discovered an injury." *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1103 (2d Cir.1988), *cert. denied,* 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158, 490 U.S. 1007, 109 S.Ct. 1643, 104 L.Ed.2d 158 (1989). According to the Second Circuit, the test of inquiry notice is objective:

> The means of knowledge are the same thing in effect as knowledge itself. Where the circumstances are such as to suggest to a person of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises, and if he omits that inquiry when it would have developed the truth, and shuts his eyes to the facts which call for investigation, knowledge of that fraud will be imputed to him. This rule is fully applicable in cases . . . which involve claims of . . . fraud.

*Armstrong v. McAlpin,* 699 F.2d 79, 88 (2d Cir.1983). Where there are multiple injuries, "each time plaintiff discovers or should have discovered an injury caused by defendant's violation of 18 U.S.C. § 1962, a new cause of action arises as to that injury, regardless of when the actual violation occurred." *Bankers Trust,* 859 F.2d at 1105.

In the present case, Plaintiff alleges seven injuries which took place between 1985 and 1993. Specifically: 1) on or about July 1986,

Plaintiff suffered $10,000,000.00 worth of losses as a result of the Rhoades Defendants failure "to represent Plaintiff in an ethical, competent, and professional manner and with a high degree of skill" in the termination or modification of the venture agreement with Bogoni, (Compl. ¶¶ 21–31); 2) on or about January 1988, Plaintiff was injured in the amount of $10,000,000.00 due to the Rhoades Defendants failure to negotiate a better property sale deal with Rabina, (Compl. ¶¶ 33–41); 3) during the period from about July 1988 to March 1990, [the Rhoades Defendants] collected, and have yet to return to Plaintiff, [from Rabina] 20 monthly [mortgage] payments of $52,500.00 each for an aggregate total of $1,050,000.00, (Compl. ¶¶ 55–60); 4) on or about January 1990 through December of 1991, Plaintiff was injured in the amount of $10,500,000.00 as a result of the Rhoades Defendants failure to defend properly Plaintiff in a re-conveyance suit brought by Bogoni, (Compl. ¶¶ 46–53); 5) Plaintiff was injured in the amount of $105,681.47 after the Rhoades Defendants advised Plaintiff not to file New York and Federal income taxes for the years 1988 through 1991, (Compl. ¶¶ 61–63); 6) during the years 1985 through 1991, Plaintiff paid $200,000.00 for fraudulent legal fees to the Rhoades Defendants, (Compl. ¶¶ 64–69); and 7) on or about June 1987 through June 1993, Plaintiff was injured in the amount of $164,900.00, which had been placed in an escrow account and has yet to be returned to the Plaintiff. (Compl. ¶¶ 70–74.)

The Plaintiff filed her cause of action on April 17, 1996; hence, she may recover for any injury she discovered or should have discovered on or after April 17, 1992. First, any reasonable juror could only find that Plaintiff, who had inherited real estate holdings and made them "flourish[ ] under her administration," (RICO Stmt. ¶ 20), should have learned of any alleged fraud when each of these complained-of acts occurred. There is no claim that Defendants withheld information or deceived Plaintiff at the time the alleged acts were done. Alleged acts one through six occurred before 1992. Plaintiff's unsupported allegation that she found out about these alleged fraudulent acts "some

time after January 1992" (Compl. ¶¶ 26, 42), still does not save her from the statute of limitations bar in that she does not allege she found out about them after April 17, 1992. Accordingly, the RICO statute of limitations bars the first six of Plaintiff's acts.

Regarding the seventh alleged act, which, read in a light most favorable to Plaintiff, alleges a cause of action for conversion arising in June 1993, the statute of limitations is not a bar. However, the act cannot support a RICO cause of action for the reasons stated above.

### B. Supplemental Jurisdiction

The Court having dismissed all claims over which it had jurisdiction, now dismisses the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c)(3).

The Court must determine whether it is appropriate to retain the remaining state law claims under supplemental jurisdiction. Section 1367(a) states in pertinent part:

the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Section 1367(c) provides, however, four exceptions to the rule. A district court may decline to exercise jurisdiction if

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

 The decision to dismiss state law claims is left to the sound discretion of the district judge. *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir.1994). Furthermore, when claims are dismissed before trial, the balance of factors will tilt towards declining to exercise jurisdiction. *See Carnegie–Mellon*

*Univ. v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 619 n. 7, 98 L.Ed.2d 720 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."); *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("If the federal claims are dismissed before trial ... the state claims should be dismissed as well"); *Travelers Ins. Co. v. Keeling*, 996 F.2d 1485, 1490 (2d Cir.1993); *Litwin v. American Express Co.*, 838 F.Supp. 855, 857 (S.D.N.Y.1993). Because all the federal claims have been dismissed at a preliminary stage, no reason remains to exercise supplemental jurisdiction over the alleged state law claims. Hence, they are hereby dismissed.

### C. Amending the Complaint

 Rule 15(a) of the Federal Rules of Civil Procedure provides that "leave [to amend a pleading] shall be freely given when justice so requires." Fed.R.Civ.P. 15(a); *See also Mathon*, 875 F.Supp. at 1002 (citations omitted). However, if there is a threat of undue delay, bad faith, futility or prejudice to defendants, leave to amend may be denied. *Mathon*, 875 F.Supp. at 1002 (citations omitted).

Due to the deficiencies in the Complaint and the RICO Statement, the Court finds that leave to replead would be futile and therefore leave to replead is denied.

### III. CONCLUSION

Defendants' motion to dismiss is GRANTED in its entirety.

SO ORDERED.