| |
|---|
| **Becker v Perla** |
| 2025 NY Slip Op 32085(U) |
| June 10, 2025 |
| Supreme Court, New York County |
| Docket Number: Index No. 651575/2013 |
| Judge: Jennifer G. Schecter |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

## SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY: COMMERCIAL DIVISION

PRESENT:  HON. JENNIFER G. SCHECTER
_____
                               *Justice*

PART _____ 54 _____

------------------------------------------------------------------------X

RONNY BECKER, STEVEN KINZELBERG, AARON
POLINSKY, JAMES BECKER, AMIT J. LANDESMAN,
ANTHONY DOLCE, NETANEL ASHKANAZI,

                         Plaintiffs,

             - v -

DANIEL PERLA, DANIEL PERLA ASSOCIATES, L.P.,
TEAM SOHO D.R., LLC, TEAM SOHO, LLC,
FOUNTAINBLEAU BEACH RESORT, S.A. A/K/A
FONTAINBLEAU BEACH RESORT, S.A., REGISTRO
MERCANTIL OF FONTAINEBLEAU BEACH RESORT, SRL,
FONTAINBLEAU BEACH RESORT SRL, COPRODUM,
S.A.,

                         Defendants.

------------------------------------------------------------------------X

INDEX NO.      651575/2013

**DECISION AFTER TRIAL**

This case principally concerns plaintiff Ronny Becker's attempt to recover his profit share from real estate development projects on 23rd Street and Greene Street in Manhattan (the NY Projects). While Becker claimed to be owed nearly $8 million, recognizing the long and tortured history of this action and the sharply disputed facts about the exact amount of his share, Becker limited his claim to the $4.5 million that defendant Daniel Perla contended he invested on Becker's behalf, along with his own money and money from other investors, in a real estate development project in the Dominican Republic (the DR Project). Perla was ordered to provide an accounting of the DR Project so that Becker could find out what actually happened to his money. As explained below, Perla failed to comply with numerous court orders regarding the accounting, which made it difficult to ascertain what happened to the money put into the DR Project. In the end though--at least for purposes of this action--many of these unresolved questions do not matter because: (1) in the accounting, Perla swore that he put $4.5 million of Becker's money into the DR Project; but (2) at his deposition and at trial, Perla admitted that he never did so. While Perla now contends that Becker is not owed any money from the NY Projects, he is estopped from taking that position based on his sworn statement to the contrary in the accounting (and, in any event, his convenient backtracking renders him wholly incredible on the matter). Since Perla admitted that Becker is owed $4.5 million and that ultimately such funds were never put into the DR Project, the court finds that he owes this money to Becker.

Also at issue in this action are claims by plaintiffs Amit Landesman and James Becker seeking return of funds that they invested with Perla. As set forth below, they failed to prove entitlement to rescission.

## DECISION AFTER TRIAL

[*1]

## Procedural History

Plaintiffs commenced this action in 2013. By order dated May 14, 2015, Perla was directed to provide accountings and all supporting documents regarding the corporate entities at issue in this case (Dkt. 90 at 2). Perla did not comply. By order dated July 14, 2015, the court set new compliance deadlines and provided specific directives regarding the level of detail that was to be provided (Dkt. 91). Perla still did not comply. The original accounting he provided, which he has since disavowed, did not comply with the court's order (*see generally* Dkt. 104). On December 14, 2015, the court issued a conditional order providing that defendants' pleadings would be stricken unless they complied and filed a proper accounting with appropriate documentation and explanations (Dkt. 108).

On May 10, 2016, Perla filed an accounting of the DR Project (Dkt. 119 [the DR Accounting]). The DR Accounting reflects that the DR Project was operated through Team Soho DR LLC and that, according to Perla, $4.5 million of Becker's money was put into this LLC as a capital contribution (*see id.* at 10).[1] This is consistent with the 2010 K-1 that Perla prepared and provided to Becker (Dkt. 465; *see* Dkt. 1192 at 20-21). It is also consistent with what Perla told Becker in 2008 (*see* Dkt. 1124 at 13).

Along with the DR Accounting, Perla filed 24 exhibits but did not identify or explain which exhibits supported which portions of the accounting (Dkt. 120). By order dated May 24, 2016, the court noted that this violated the December 14 conditional order, but the court imposed a monetary sanction instead of striking defendants' pleadings (Dkt. 121). The court further ordered Perla to file an affidavit attesting that he has no further documents supporting the accountings (*see id.* at 2). Perla, again, did not comply, but yet again was given a final opportunity to do so (*see* Dkt. 123). On July 13, 2016, Perla filed an affidavit stating that he has no further documents in his possession, custody or control supporting the accountings (Dkt. 124).

The parties then spent considerable time completing fact and expert discovery based on the accountings. The note of issue was filed in 2019. After an extensive pre-trial process, the court held a bench trial in July 2024 (*see* Dkts. 1191-1197), after which the parties filed post-trial briefs (Dkts. 1200, 1216, 1217).

## Becker's Claim

Becker is entitled to recover $4.5 million. Perla filed an accounting in 2016 in which he took the position that Becker was owed $4.5 million from the NY Projects and that this money was put into the DR Project as Becker's capital contribution. He swore in an affidavit that the accounting was true and complete (Dkt. 119 at 27).[2] The parties then

---

[1] The accounting purports to explain various other hotly disputed expenditures, such as the amount purportedly spent on the land. While Perla did not credibly provide any testimony or evidence about exactly how much was really paid for the land (and indeed the court did not find him to be a credible witness), as noted, the court need not ascertain the true amounts spent on the DR Project since they are not necessary to resolve plaintiffs' claims.

[2] Though Perla did not explicitly state in the accounting that the $4.5 million is money owed to Becker from the NY Projects, based on the evidence, that is the only basis for the contribution.

spent years and significant resources taking discovery to vet the veracity of this assertion and to see what happened to this investment. Remarkably, at his deposition, Perla admitted that he could not identify any specific bank records showing Becker's money being put into the DR Project (*see* Dkt. 1155 at 160-161). He claims to have essentially made up the numbers to justify how much he wanted to attribute to the parties' capital contributions based on the amounts that were supposedly put into and spent on the DR Project (*see id.*). Perla confirmed this at trial (Dkt. 1191 at 156-159; *see* Dkt. 1216 at 8 ["Defendants never produced or showed to the Court a single check or wire transfer connected to those [$4.5 million] payments. Instead, at trial and over the past sixteen years preceding trial, Defendants took the position that they could not produce checks, wire transfers or even deposit entries from bank statements that Perla himself controlled and received at his own home. When asked why Perla doesn't simply attach the bank records to show the deposit of the $9 million dollars (half Perla's money and half Becker's money), Perla swore that he came up with the $9 million dollar number by adding up all the DR Project expenses and subtracting the third-party investor money out and that left $9 million dollars, so that had to be his and Becker's investment"]; *see also id.* at 11). Thus, it is undisputed that Perla never put <u>any</u> of Becker's money into the DR Project and that Becker's $4.5 million capital contribution that Perla recorded was just a made-up accounting notation (*see* Dkt. 1216 at 17 ["Perla swore he never told Guberman he put Becker's $4.5 million in the DR Project" and that "when asked about the alleged $9 million dollar contribution, Guberman testified 'there was no document that backed that calculated number up, no"], citing Dkt. 1191 at 157, Dkt. 1197 at 24).

This admission would seemingly resolve this case. However, Perla now contends that he does not owe Becker any money.

The court rejects this outrageous assertion. There was no reason for the parties to have spent years trying to follow the money and to have investigated the details of the DR Project if Becker was not owed $4.5 million on the NY Projects in the first place. That was the whole basis for the DR Project accounting. If Perla's position was that Becker was not entitled to any further profits on the NY Projects, he should have just said so, and the focus of the case would have been limited to the accountings of the NY Projects. The DR Project would not have mattered. Instead, Perla repeatedly told Becker that his $4.5 million of profit on the NY Projects was invested into the DR Project (Dkt. 1124 at 13-14, 21; *see* Dkt. 465). He now admits that never occurred. Perla could simply have taken the position that Becker was not owed any unpaid profits from the NY Projects rather than making up a fake capital contribution to which Becker was supposedly entitled. Perla made Becker go on a wild goose chase based on a lie.

---

Perla does not contend that Becker's capital contribution was or could have been attributable to anything else. After all, there was no evidence that Becker supplied Perla with $4.5 million in cash. Indeed, the entire premise of accounting for Becker having a capital contribution was to give him credit for what he was owed from the NY Projects. That was Perla's only excuse for not paying Becker his profits. Becker testified that Perla told him that is where he allocated his profits, and this is consistent with the 2010 K-1. Thus, when Perla accounted for Becker having a $4.5 million capital contribution in the DR Project, the court finds this to be an admission that this is an amount that Becker was owed on the NY Projects.

[* 3]

Under these circumstances, the court finds that Perla, a fiduciary, is bound by his sworn representation in his accounting that Becker earned and is owed $4.5 million (*see Matter of Liquidation of Union Indem. Ins. Co. of N.Y.*, 89 NY2d 94, 103 [1996]; *see also* Dkts. 465, 552). Perla cannot disavow his critical admission as a strategic tactic at trial. The whole point of an accounting is for a fiduciary to disclose what happened to money. While Becker interposed extensive objections to the accountings, he accepted defendants' fundamental admission that Becker, at a minimum, was entitled to $4.5 million as his outstanding profit share from the NY Projects (*see* Dkt. 555 at 17 n 18). Perla cannot credibly walk that back at trial. Crediting such wasteful gamesmanship would make a mockery of the judicial process.

Even if there is no doctrinal basis to categorically estop a fiduciary from disavowing an admission in his own accounting that has been the basis of the parties' more-than-a-decade-long litigation, the information in Perla's accounting along with his prior representations to Becker are still informal judicial admissions and credible evidence that Perla, at a minimum, owes Becker $4.5 million (*U-Trend N.Y. Inv. L.P. v US Suite LLC*, 186 AD3d 438, 441 [1st Dept 2020]; *Bogoni v Friedlander*, 197 AD2d 281, 292 [1st Dept 1994]; *see Milton Weinstein Assoc. v Nynex Corp.*, 266 AD2d 138, 139 [1st Dept 1999]; *see also Capasso v Capasso*, 119 AD2d 268, 272 [1st Dept 1986], *accord Pezzullo v Palmisano*, 261 AD2d 173, 174 [1st Dept 1999]). As discussed, Perla's unfounded attempt to explain away these admissions lacks credibility. Indeed, in hindsight, and based on an evaluation of Perla's credibility, it appears that Perla never had any intention of paying Becker his profit share from the NY Projects and simply made up a story about putting his money into the DR Project. But when it became clear that he could never properly account for the money and faced the prospect of being surcharged, he backtracked and tried to claim that Becker is owed nothing. This account lacks any credibility.

Becker, by contrast, was a credible witness. The court credits his testimony and the credible evidence he submitted at trial showing that he is owed more than $4.5 million (Dkt. 1216 at 19-24; *see* Dkt. 1124 at 13-14, 21; *see also* Dkt. 465). The court need not determine exactly how much more he was owed since he only seeks $4.5 million (*see* Dkt. 1216 at 24). Becker is undoubtedly owed this money.

Aside from Perla's undisputed testimony that Becker's $4.5 million was never invested into the DR Project, the court does not credit any other portion of Perla's testimony. He cannot be trusted to testify truthfully after having lied for so many years about investing Becker's money into the DR Project. Moreover, so much of his testimony about what happened with the DR Project did not come across as truthful and was not supported by any credible corroborating evidence. His accountings certainly cannot be trusted; they suffer from a lack of supporting documentation. To be sure, even though Perla's failure to properly account for all of the money spent on the DR Project has limited dispositive import beyond Becker's entitlement to the $4.5 million (*but see infra*, n 5), the overarching lack of

[* 4]

credibility of Perla's accounting testimony was a further indication that he is not a reliable witness.[3]

Becker is entitled to pre-judgment interest from the date he demanded his money in August 2008 (CPLR 5001; *see Gliklad v Cherney*, 132 AD3d 601 [1st Dept 2015]; *Eisen v Feder*, 47 AD3d 595, 596 [1st Dept 2008]; *First Wall St. Settlement Corp. v Hart*, 187 AD2d 352, 353 [1st Dept 1992]).[4]

The Other Plaintiffs' Claims

Plaintiffs Amit Landesman and James Becker failed to submit clear and convincing evidence that Perla made any misrepresentations that fraudulently induced their investments (*Gaidon v Guardian Life Ins. Co. of Am.*, 94 NY2d 330, 349 [1999]; *see Hayes v Martinez*, 216 AD3d 488, 489 [1st Dept 2023], citing *Pasternack v Laboratory Corp. of Am. Holdings*, 27 NY3d 817, 828 [2016]). While Landesman testified that he spoke with Perla, his testimony is devoid of any specific details about what exact factual representations were false or that they were knowingly false (Dkt. 1076 at 2; *see* Dkt. 1200 at 26-27). Not only is the same true of James Becker, but he also testified that he received his information from Ronny Becker (Dkt. 1102 at 3; *see* Dkt. 1200 at 20-22). Thus, there is no basis to rescind their investments. Their other arguments are unavailing.

Conclusion

While the court recognizes that there are many unresolved questions about the status of the DR Project, it is unclear if anyone will further probe those questions or seek additional recourse. In light of how the parties charted their course in this action--Ronny Becker limiting his claim to the $4.5 million and Amit Landesman and James Becker electing to pursue their rescission claim--the court will not provide advisory opinions on those questions since they are not necessary to decide the claims that plaintiffs asked the court to resolve. Perhaps the recovery awarded will be sufficient for the parties to move on.[5]

---

[3] While the court was not persuaded by Perla's expert's testimony either (*see, e.g.*, Dkt. 1197 at 72-73), since the court finds that the credible evidence proves Becker's entitlement to the $4.5 million, such evidence does not warrant more extensive discussion. Of course, no expert could salvage an accounting that lacks credible documentation and is based on an unreliable fiduciary's testimony (*see O'Mahony v Whiston*, 224 AD3d 609, 609-611 [1st Dept 2024]). The court also will not discuss the testimony of Becker's expert since his assertions about the accountings, while largely credible, are academic.

[4] Since Becker's testimony was unclear about the exact date, interest will run from the end of that month. This will compensate Becker for the loss of the use of his funds (*see NML Capital v Republic of Argentina*, 17 NY3d 250, 266 [2011]).

[5] For the avoidance of doubt, the court has considered all of the other arguments made in the post-trial briefs and finds them either unavailing or moot by virtue of these determinations. Likewise, to the extent that there were any other pending claims not addressed in the briefs, the court deems them abandoned or unavailing. While defendants sought to interject confusion about the scope of the trial and suggested there might be further claims to be addressed afterward (*see, e.g.*, Dkt. 1191 at 14), and though the court declined to rule out that possibility prior to trial because it was theoretically possible that some legal claims might have been left unresolved, the court's rulings

Accordingly, it is ORDERED that the Clerk is directed to enter judgment: (1) in favor of plaintiff Ronny Becker and against defendant Daniel Perla in the amount of $4.5 million, with 9% pre-judgment interest from August 31, 2008 to the date judgment is entered; and (2) dismissing all other claims with prejudice.

Plaintiffs shall e-file a proposed judgment <u>to the Clerk</u> consistent with this order.

DATE: 6/10/2025                                   JENNIFER G. SCHECTER, JSC

---

on the accountings negate that possibility. The court has found that Becker is owed $4.5 million from the NY Projects and that Perla's accountings are unreliable. Any affirmative claims based on Perla's involvement with the NY Projects and the DR Project were necessarily subsumed in the accountings. Thus, there cannot be any legal or equitable basis for Perla to seek any affirmative recovery. Indeed, Perla has escaped more severe accountability—likely millions of additional dollars of unpaid profits and millions of dollars in derivative damages due to corporate waste and attorneys' fees due to his failure to account—by virtue of Becker having limited his claim to the $4.5 million. If Perla had maintained from the outset that Ronny Becker had no interest in the DR Project, tremendous time and cost would have been avoided. Under these circumstances, and knowing that enforcement proceedings may lie ahead, Perla is cautioned that if he engages in further wasteful litigation or proffers additional clearly false assertions, the court will entertain an application for sanctions.